**Anna STORIE, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**No. 90–659–C(2).**

United States District Court, E.D. Missouri.

March 31, 1992.

See also 142 F.R.D. 317.

Laura B. Allen, Heller & Heller, Paul C. Hetterman, Diekemper, Hammond, Shinners, Turcotte and Larrew, St. Louis, Mo., for plaintiff.

Eric T. Tolen, Asst. U.S. Atty., St. Louis, Mo., for defendant.

## MEMORANDUM

FILIPPINE, Chief Judge.

This matter is before the Court for a decision on the merits after trial to the Court. After consideration of the pleadings, the testimony and exhibits introduced at trial, the parties' briefs, and the applicable law, the Court enters the following memorandum which it adopts as its findings of fact and conclusions of law in accordance with Rule 52(a) of the Federal Rules of Civil Procedure.

Plaintiff brought this action pursuant to the provisions of the Federal Tort Claims Act, 28 U.S.C. §§ 2671–2680, based on injuries sustained when plaintiff slipped and fell at the United States Post Office in Potosi, Missouri. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1346(b) and 2672. Additionally, venue is proper in the Eastern District of Missouri. 28 U.S.C. §§ 1391(e) and 1402(b).

The accident which led to plaintiff's injuries occurred on December 16, 1987, when plaintiff made a stop at the post office in Potosi, Missouri. On the day of the accident, approximately three inches of snow remained on the ground from snowfall the previous day. The sidewalk outside the post office had been cleared. Plaintiff entered the front doors of the post office into the outer lobby. A large mat, approximately three feet by five feet, was located at these doors and plaintiff wiped her feet on this mat. She then proceeded through the outer lobby, turned to the left, and entered the inner lobby through another set of doors. Plaintiff testified that no mat was on the floor by these doors or on the floor in any area of the inner lobby.

Plaintiff walked to the customer service counter and bought three stamps from a postal employee. She then turned and walked a short distance to a table where she stamped some envelopes. As plaintiff turned to walk away from the table, she slipped and fell on her right side. Mr. Al Watz, Postmaster of the Pacific Post Office, was summoned by a postal employee. Seeing that plaintiff was injured, Mr. Watz called an ambulance.

Plaintiff was transported to St. John's Mercy Hospital in Washington, Missouri. Plaintiff was diagnosed as having a fractured right hip, which required surgery and the insertion of a metal pin and plate to

correct the fracture.[1] This surgery was performed on December 18, 1987. Plaintiff remained in the hospital for approximately two weeks and was dismissed on or about December 30, 1987. After her hospital stay, plaintiff received several weeks of physical therapy at home. In January, 1989, plaintiff again underwent surgery to remove the metal pin and plate.

In an action brought under the Federal Tort Claims Act this Court applies the law of the state where the negligent act occurred. Thus, Missouri substantive law governs this action. *Richards v. United States*, 369 U.S. 1, 82 S.Ct. 585, 7 L.Ed.2d 492 (1962); *Stuppy v. United States*, 560 F.2d 373 (8th Cir.1977).

■■■ To prevail in a negligence action, the plaintiff must prove "1) the existence of a duty on the part of the defendant to protect the plaintiff from injury, 2) breach of that duty, 3) causation, and 4) injury to the plaintiff." *Madden v. C & K Barbecue Carryout, Inc.*, 758 S.W.2d 59, 61 (Mo. 1988) (en banc) (citations omitted). When the owner or proprietor of a business has actual or constructive knowledge of a dangerous, foreseeable condition, he has the duty to use due care to prevent injuries to invitees resulting from that condition. *Sheil v. T.G. & Y. Stores Co.*, 781 S.W.2d 778, 781 (Mo.1989) (en banc). The length of time the dangerous condition exists is not the only factor to consider when deciding whether the proprietor had knowledge of the condition. The Court must consider the nature of the business and other surrounding circumstances as well. *Spencer v. Kroger*, 941 F.2d 699, 701–02 (8th Cir.1991); *Sheil*, 781 S.W.2d at 781. Liability under Missouri law for injuries to a business invitee was summarized by the United States Court of Appeals for the Eighth Circuit as follows:

> Thus, the liability of a store owner with respect to a slip and fall case is predicated on the foreseeability of the risk and the reasonableness of the care

extended toward business invitees, which, in Missouri, is now a question of fact to be determined by the totality of the circumstances, including the nature of the business and the methods of its operations.

*Spencer*, 941 F.2d at 703. The invitee's knowledge of a dangerous condition is considered to determine comparative fault but does not relieve the proprietor from liability. *Cox v. J.C. Penney Co.*, 741 S.W.2d 28, 30 (Mo.1987) (en banc).

■■■ The United States' liability in this case depends on whether it breached its duty to use reasonable care to protect invitees to the Potosi Post Office from foreseeable hazards on the premises of the Post Office. The Court must determine, in light of all the circumstances, whether the presence of a wet substance on the floor of the post office was foreseeable and, if so, whether the United States breached its duty to make the premises safe for invitees.

The credible evidence shows that the weather on the day of plaintiff's accident was snowy, with accumulated snow still on the ground. Al Watz and two other postal employees testified that a "Caution—Wet Floor" sign was placed in the outer lobby whenever the floor was mopped or the weather was inclement. One employee, Cindy Schoolcraft, could not remember whether the sign was placed in the outer lobby on December 16, 1987, but did testify that the sign was regularly placed where people entering the post office could see the sign when the weather was bad. Watz and Celeste Babcock both testified that the sign was up on the day of the accident. Plaintiff testified that no sign was present when she entered the post office. The credible evidence supports a finding that the caution sign was placed in the outer lobby on December 16, 1987, the day of the accident.

The fact that a caution sign was placed in the outer lobby is not sufficient, in and

---

1. The surgery was performed by Dr. Robert Steinberger who subsequently moved to the East Coast. No testimony was available from Dr. Steinberger at the time of trial. However, defendant does not contest the fact of injury or that the injury was caused by plaintiff's fall. Defendant also does not contest the necessity of the medical care received by plaintiff.

of itself, to support a finding that defendant did not breach a duty to plaintiff. Watz testified that the caution sign was put out during inclement weather because such weather conditions could cause the floor to become wet and slippery. The Court therefore finds that defendant knew the weather conditions on December 16, 1987, could cause dangerous conditions and that the presence of a wet substance on the floor was foreseeable. The Court further finds that, under these circumstances, placing a caution sign in the outer lobby is not, by itself, sufficient to make the premises reasonably safe for postal customers.

Celeste Babcock and Al Watz testified that the floors were mopped on the day of the accident. Babcock testified that the floors were mopped "on and off" during the day. Watz testified that the floors were mopped every thirty minutes to one hour that day. The accident occurred at approximately 3:30 p.m.; Watz testified he had last mopped at 3:00 p.m. Watz further testified that the floors were regularly mopped in an effort to keep them reasonably dry and clear of snow tracked in by customers.

The greatest controversy surrounds whether any floormats were placed in the inner lobby of the post office. Neither Babcock nor Schoolcraft could remember if a mat was on the floor in the inner lobby. Both remembered that the mats by the entrance doors to the outer lobby were left out year-round. Watz testified that a mat was on the floor by the table where plaintiff fell and that mats were also on the floor by the service counter. Watz further testified that the mat by the table as well as the mats at the entrance, were left out year-round. Plaintiff testified that she was certain no mats were on the floor in the inner lobby.

The photographs of the scene of the accident taken by defendant and presented as defendant's exhibits at trial do not show any mats on the floor of the inner lobby. The photographs were not taken at the time of the accident. Watz testified that the reason the mats were not on the floor in the pictures was that the mats may have been sent out for cleaning and not yet returned on the day the photos were taken.

Babcock and Schoolcraft both testified that mats were by the entrance door year-round, but did not testify that there were mats in the inner lobby year-round. Furthermore, neither of these witnesses testified that a mat was on the floor of the inner lobby on the day of the accident. Plaintiff testified that she was certain no mat was present. The only witness to testify with certainty that a mat was present was Al Watz. After considering all of the testimony and exhibits presented at trial, the Court finds that the preponderance of credible evidence supports a finding that no mats were on the floor in the inner lobby.

Water on the floor of the post office was a dangerous, foreseeable condition, given the fact of inclement weather on the day of the accident. Defendant failed to fulfill its duty of reasonable care under the circumstances when it failed to have a floormat in the inner lobby. Defendant's duty was not fulfilled by the placing of the caution sign and periodic mopping. Watz, Babcock, and Schoolcraft testified that customer traffic was heavy on the day of the accident because of the Christmas season. The post office did not have its own custodian on that day. Apparently, Watz himself did most of the mopping. Under all of these circumstances, the Court finds that defendant's duty to use reasonable care to prevent injuries to postal customers would have included placement of a floormat by the table used by postal customers. Defendant breached this duty. As a result, water accumulated on the floor which was the proximate cause of plaintiff's accident and injuries.

By its post-trial brief, defendant hypothesizes that the cause of plaintiff's injury was her failure to use reasonable care to determine whether any snow or ice had melted from the shoes of the only other postal customer present at the time of plaintiff's fall. This other customer was standing at the table where plaintiff fell during the time plaintiff bought her stamps, walked to the table, placed the stamps on her envelopes, turned and fell.

Defendant's hypothesis that any water on the floor came from the shoes of this other postal customer does not aid defendant. The postal employee witnesses testified that there was heavy customer traffic on December 16. Therefore, the Court cannot conclude that the water on the floor came from the shoes of the customer who happened to be in the post office at the same time as plaintiff. Furthermore, even if events occurred as defendant hypothesizes, if defendant had placed a mat at the table used by plaintiff and this other customer, any water melting from the customer's shoes would have been absorbed by the mat. However, no mat was present to absorb the water and thus defendant's negligence was the cause of plaintiff's injuries.

■ Defendant contends that any recovery by plaintiff in this case should be minimal because of plaintiff's contributory negligence and because plaintiff cannot prove loss of wages.

Missouri courts apply the system of comparative negligence to apportion damages between the parties when more than one party is at fault. *Gustafson v. Benda,* 661 S.W.2d 11 (Mo.1983) (en banc). Where the Court finds that the conduct of both parties combined or contributed to cause the damage, the Court may apportion the damages between the parties according to each party's degree of fault. *Allison v. Sverdrup & Parcel & Assoc.,* 738 S.W.2d 440, 451 (Mo.App.1987). Missouri has adopted the "pure" form of comparative fault so that a plaintiff's negligence does not relieve the defendant from liability; it merely diminishes the amount of damages that plaintiff may recover. *Id.*

Plaintiff's conduct did not contribute to the cause of plaintiff's injuries. Plaintiff testified she wiped her feet as she entered the outer lobby of the post office. She also testified she looked at the floor and walked slowly. The lighting was good in the post office, but plaintiff did not see the water on the beige-colored tile floor. However, Babcock testified that she slipped on the floor later in the day and also did not see that the floor was wet prior to slipping. The Court finds credible plaintiff's testimony

that she wiped her feet and walked slowly. Furthermore, the failure to see the water on the floor was not due to plaintiff's negligence but because of the difficulty of seeing a clear liquid on a beige floor. Plaintiff's actions did not contribute to her injuries.

■ In Missouri, damages for lost wages are to be awarded only when the amount of lost wages is "established with reasonable certainty upon which substantial evidence must be introduced." *Anderson v. Burlington Northern R.R. Co.,* 700 S.W.2d 469, 477 (Mo.App.1985). Here, the evidence of lost wages consists of copies of plaintiff's tax returns for 1984, 1985, and 1986 and plaintiff's W–2 Wage and Tax Statement for 1987 from Professional Cleaning Services. Those records reflect that in 1985 plaintiff did not earn any income; in 1986 plaintiff earned $783; and, in 1987 plaintiff earned $1,256. Plaintiff was employed at Professional Cleaning Services at the time of her accident. That company went out of business in 1988. Plaintiff has limited education and training. No substantial evidence was presented on which the Court can make a reasoned finding as to amount of lost wages, and therefore lost wages will not be included in the damage award.

■ Plaintiff continues to have pain and diminished range of motion in her right leg as a result of this accident. Furthermore, plaintiff is not able to stand for long periods of time and is no longer able to bowl. Plaintiff's medical expenses due to this injury amount to $19,040.32. Under the facts and circumstances of this case, the Court finds that plaintiff has suffered damages in the amount of $60,000.00. Of this amount, $19,040.32 represents medical expenses and the remainder represents damages for pain and suffering and loss of enjoyment of life.

An appropriate judgment shall accompany this memorandum.