_____

Nos. 95-1998 and 95-2000
_____

Betty Jane Stewart,                    *
                                       *
     Appellant/Cross-Appellee,         *        Appeals from the United States
                                       *        District Court for the Eastern
                                       *        District of Missouri.
v.                                     *
                                       *
M.D.F., Inc.,                          *
                                       *
     Appellee/Cross-Appellant.         *


_____

Submitted:  January 10, 1996

Filed:  May 9, 1996

_____

Before WOLLMAN, CAMPBELL,* and MURPHY, Circuit Judges.
_____

CAMPBELL, Senior Circuit Judge.

        Plaintiff-appellant Betty Jane Stewart brought this diversity action
against defendant-appellee, MDF, Inc., after she slipped and fell at a
Wendy's Old Fashioned Hamburgers restaurant owned by MDF.[1]  Following a
jury trial, Stewart was awarded $15,832.10 (75% of the total damages found,
as she was held 25% responsible for her injuries).  Plaintiff now contends
that the district court erred in denying, without an evidentiary hearing,
her motion to enforce a settlement agreement allegedly reached as the jury
deliberated.  Defendant cross-appeals from the district court's denial of
its

---

        *The HONORABLE LEVIN H. CAMPBELL, United States Circuit Judge,
for the First Circuit, sitting by designation.


        [1] Mrs. Stewart's husband, who sued for loss of consortium
(which he did not recover), is not a party to this appeal.  Thus,
references to "Stewart" in this opinion refer to Mrs. Stewart.

motion for judgment as a matter of law. We affirm the district court's handling of the settlement issue and its denial of the motion to enforce, and we also affirm the denial of defendant's motion for judgment as a matter of law.

## I.

Stewart, seventy years old, entered a Wendy's restaurant in St. Louis and immediately slipped and fell in the vestibule area. She broke her left thigh bone, requiring surgery, an in-hospital stay of two weeks, and after-care, and her mobility has since been seriously impaired.

Trial commenced on January 3, 1995. During trial, the attorneys for the parties discussed settlement. On the first two days of trial, plaintiff's attorneys, Barry Ginsburg and Burton Newman, rejected on plaintiff's behalf offers of $35,000 and $50,000 made by defendant's attorney, Joseph Swift. The next day, before the jury began deliberating, plaintiff's attorneys rejected an offer of $60,000. Defendant's next offer of $75,000, made as the jury commenced deliberations, was also rejected. Thereafter, plaintiff's counsel told defense attorney Swift that the plaintiff was interested in a "high-low" arrangement, whereby she would receive $50,000 if the verdict were below that amount, at most $200,000 even if the verdict were higher, and the exact amount of any award between $50,000 and $200,000.

Defense attorney Swift called MDF's insurer, Essex Insurance Company, with whom he discussed settlement offers. What followed is disputed. As reported by Ginsburg and Newman, Swift told them that his client was willing to enter into a high-low arrangement of $50,000/$115,000. Swift, they said, did not say he lacked authority to make the offer or use qualifying language (_e.g._, "my client _might_ be willing to pay"), which occasionally had been used in previous discussions. Ginsburg and Newman allegedly told Swift that they would discuss the proposal with their client, who was in

2

the courthouse hall. They spoke with her, and before they could tell Swift that she accepted the offer, he told them that the jury had returned. They followed Swift into the courtroom and stated that plaintiff accepted the high-low offer of $50,000/$115,000. Swift said that he had to call his client for authority. Plaintiff's counsel responded that Swift had made an offer to settle the matter and that it had been accepted.

Swift provides a different version of the exchange. He says that when he called MDF's insurer to ask about the $50,000/$115,000 high-low arrangement proposed by plaintiff that morning, his contact there said he did not have authority to allow Swift to enter into a high-low agreement at that time, but that Swift should continue negotiations with other figures. Swift then told plaintiff's counsel that his client was interested in negotiating the possibility of a high-low agreement, with a high of $115,000 instead of plaintiff's proposed $200,000. According to Swift, Newman immediately rejected the $115,000 amount, but said he would speak with his client. Swift indicates he did not make a definite offer of a high-low agreement, as he did not have authority. Shortly afterward, Swift heard that the jury had reached a verdict, and he notified plaintiff's counsel. Plaintiff's counsel then told him that their client accepted the $50,000/$115,000 offer. Swift responded that he did not have authority for the high-low agreement and had to call his client to discuss it. He called Essex Insurance Company. His contacts there did not give him authority to enter into a high-low agreement, but authorized him to reiterate the $75,000 offer. Accordingly, Swift reported to Ginsburg and Newman that he lacked authority for an agreement of $50,000/ $115,000, but that his client would reiterate its last offer of $75,000. Plaintiff's counsel rejected the latter, claiming that plaintiff already had accepted MDF's high-low offer.

Before the jury announced its verdict, the district court asked counsel if either party wanted to make a record. Plaintiff's

3

counsel stated that they believed a binding high-low settlement agreement of $50,000/$115,000 had been reached, but that defendant's counsel was now claiming he lacked authority to make such an offer. Defendant's counsel explained that he thought he had last offered $75,000, which was rejected; he disavowed having had authority to make the high-low offer that plaintiff claimed to have accepted. Newman stated that this dispute "may be a matter that would require some attention post-trial, . . . and for purposes of the record at this point, I think I said what I want to say." The district court then denied the request by plaintiff's counsel to enforce settlement, reasoning that the jury verdict could be reported (since the alleged high/low settlement agreement turned on the amount of the jury award, in any case) and then the parties could make a further record. The court did not make express findings, but it said it doubted whether the asserted settlement agreement was enforceable: "[A]ssuming that the facts are as counsel for the plaintiffs have stated them, if in fact he [MDF's counsel] is now announcing in court, as an officer of the court, that he does not have the authority, even though he may have indicated to counsel that he did or impliedly did, I don't know [that] I could enforce it." The jury then returned and announced a verdict. This resulted in an award to Stewart of a total of $15,832.10.

Plaintiff promptly filed a motion to enforce settlement. She requested a hearing on the motion and enclosed affidavits of her counsel, Ginsburg and Newman. Defendant opposed the motion, submitting affidavits of its counsel, Swift, and two employees of Essex Insurance Company, with whom Swift discussed settlement offers. The affidavits essentially confirmed each side's version as earlier presented to the court prior to the verdict. The insurer backed Swift's assertion that it never gave him authority to make the offer described by Ginsburg and Newman. The district court denied plaintiff's motion without holding an evidentiary hearing or making findings.

4

## II. Motion to Enforce Settlement: Evidentiary Hearing

Plaintiff contends that the district court erred in denying her motion to enforce settlement without first holding an evidentiary hearing. She argues that such a hearing was required as there was a substantial factual dispute concerning the existence and terms of a settlement agreement, and says that discovery, testimonial development, and cross-examination would have aided the court in resolving the facts. Defendant responds that the district court did not abuse its discretion in denying the request for an evidentiary hearing; alternatively, even if it did, the denial of a hearing did not materially affect the denial of the motion to enforce settlement, because plaintiff could not demonstrate by clear and convincing evidence that an authorized settlement agreement had been reached.

When a motion is based on facts not appearing of record, Fed.R.Civ.P. 43(e) provides that a district court "may hear the matter on affidavits presented by the respective parties," or "may direct that the matter be heard wholly or partly on oral testimony or deposition." This rule invests the district court with considerable discretion to tailor the proceedings to the practical realities surrounding the particular motion. This court has said, it is true, that as a general rule, an evidentiary hearing should be held when there is a substantial factual dispute over the existence or terms of a settlement. TCBY Systems, Inc. v. EGB Assocs., 2 F.3d 288, 291 (8th Cir. 1993), cert. denied, 114 S. Ct. 2104 (1994). But this rule presupposes that there are essential issues of fact that can only be properly resolved by such a hearing. See Sheng v. Starkey Labs., Inc., 53 F.3d 192, 194-195 (8th Cir. 1995) (remanding for a hearing where the district court enforced a settlement agreement on an erroneous ground, and did not fully consider whether the disputed terms were material); Greater Kansas City Laborers Pension Fund v. Paramount Indus., Inc., 829 F.2d 644, 646 (8th Cir. 1987) (remanding for an evidentiary hearing where counsel agreed to a settlement allegedly without consent from

5

his client, who was not in court to object to its enforcement). There is no automatic entitlement to an evidentiary hearing simply because the motion concerns a settlement agreement. See Vaughn v. Sexton, 975 F.2d 498, 505 (8th Cir. 1992), cert. denied, 507 U.S. 915 (1993).

Here, even accepting plaintiff's version of what was said, there was little likelihood that the motion to enforce the alleged settlement agreement could be granted. Both defendant's counsel and representatives of the Essex Insurance Company asserted unequivocally by affidavit that the former had not been authorized to make a firm high-low offer, but only to continue negotiations. We have held that "[a]lthough an attorney is presumed to possess authority to act on behalf of the client, 'a judgment entered upon an agreement by the attorney may be set aside on affirmative proof that the attorney had no right to consent to its entry.'" Surety Ins. Co. of California v. Williams, 729 F.2d 581, 582-583 (8th Cir. 1984). Thus even supposing, for purposes of argument, that Swift spoke in such a way as to give plaintiff's attorneys reason to believe that he was authorized to offer a high-low agreement of $50,000/$115,000, the absence of authority from the insurer-client, as detailed in the affidavits of Swift and two insurance company supervisors, was a major stumbling block to enforcement of any resulting alleged agreement between the attorneys.

Plaintiff argues that an evidentiary hearing is required in order to allow her to search for any evidence that may exist to undercut the defendant's affidavits disclaiming authority (e.g., possible insurance company documents authorizing Swift to make a range of settlement offers, or notes from the company's last telephone conversation with Swift about the high-low offer) and to conduct cross-examination. But even assuming that a search could be effectively conducted notwithstanding the various privileges that might be argued, we cannot say that the judge abused his discretion in refusing to grant an evidentiary hearing for such a

6

fishing expedition.  Under Missouri law, a motion to enforce settlement is a collateral action which imposes on the party seeking specific performance "the burden of proving, by clear, convincing and satisfactory evidence, his claim for relief."  Randall v. Harmon, 761 S.W.2d 278 (Mo. Ct. App. 1988) (citation omitted).  Plaintiff pointed to nothing tangible to support the existence of evidence contradicting defendant's affidavits.  On the present record, the court was well within its authority to conclude that plaintiff had neither established nor indicated that she could establish by clear evidence of the requisite strength, the existence of an enforceable settlement agreement.

We add that there were additional factors justifying the court's exercise of its discretion in this matter.  The judge had already heard firsthand versions of the conversations between the attorneys within minutes of when they occurred.  With the actual participants before him, he had been able to make some assessment of the strengths and credibility of each version.  Moreover, since the attorneys reported before the jury rendered its verdict, they could not be suspected of tailoring their stories to the verdict.  In particular, the low jury award could not have been a factor in Swift's disclaimer of authority to enter into the $50,000/$115,000 high-low agreement especially when one considers that Swift at this time reiterated the authorized $75,000 settlement offer.

The district court could further take into account the unseemliness of holding, in effect, a mini-trial to resolve a dispute between attorneys arising from their oral settlement talks in the corridors of the courthouse.  While on occasion such a proceeding may be required, it is not one to be encouraged, especially when it is the product of settlement negotiations which are expected to be candid and not chilled by fear that informal remarks will be seized upon to create new liabilities.  The judicial policy favoring settlement, e.g., Justine Realty Co. v. Amer. Nat'l Can Co., 976 F.2d 385, 391 (8th Cir. 1992), rests on

7

the opportunity to conserve judicial resources, not expend them further. E.g., Murchison v. Grand Cypress Hotel Corp., 13 F.3d 1483, 1486 (11th Cir. 1994). Here the parties' counsel were the sole witnesses to their own conversations; and, as the court noted, counsels' representations to it were made as officers of the court. This latter element was a further reason, absent evidence to the contrary, for the court to assume that they were all speaking in good faith -- that they had simply misunderstood or misheard one another, as might easily be done, about the extent of Swift's authority and his intent to make a binding offer rather than merely an exploratory one.

This is not a case where, after counsel jointly represented to the district court that a settlement agreement was reached, a party later claimed that its counsel was not authorized, and the court nevertheless enforced the agreement without a hearing, leading the party to seek to set aside the court's judgment under Rule 60(b). See, e.g., Greater Kansas City Laborers Pension Fund, 829 F.2d at 645-646 (relying on similar situation and disposition in Surety Ins. Co. of California, 729 F.2d at 582). Rather, here, the court was faced with counsel who never for a fleeting moment in its presence reflected anything but disagreement.

We affirm the district court's refusal to hold an evidentiary hearing on plaintiff's motion to enforce the alleged settlement agreement and its denial of that motion.

### III. Cross-Appeal: Motion for Judgment as a Matter of Law

MDF cross-appeals from the district court's order summarily denying its motion for judgment as a matter of law. Defendant contends that the plaintiff did not make a submissible negligence case, because she failed to show that the floor was wet immediately before she fell and that MDF had actual or constructive notice of this alleged hazard. We review de novo the denial of a motion for judgment as a matter of law, viewing the evidence and reasonable

8

inferences in the light most favorable to the nonmoving party, plaintiff. E.g., Harvey v. Wal-Mart Stores, Inc., 33 F.3d 969, 970 (8th Cir. 1994).

We think the district court properly sent the case to the jury. Plaintiff testified that she felt water as she lay on the floor, though she did not see water before she fell because she was not looking down as she entered the restaurant. Her husband testified that when he arrived shortly after her fall, he saw an eighth-inch of water on the floor and felt that the spot was slick. He also stated that at the hospital he noticed apparent grease marks on the back of his wife's raincoat which would not previously have been there. Although the store manager testified that she saw that the vestibule floor area was dry before plaintiff entered, she also testified that it was raining hard during the busy restaurant hour before noon and that she knew if it rained, the floor would become wet (since customers previously had tracked water into it on such days). Indeed, she put out a "wet floor" sign. The store manager also admitted that the floor was mopped at 10:30 a.m. but not again before plaintiff fell, and that no mat was by the door. She and another MDF employee testified that store policy was to do frequent walk-throughs to maintain clean, safe conditions.

Viewed in the light most favorable to the plaintiff, the above evidence was sufficient to permit a jury to determine whether the unsafe condition existed before plaintiff fell. See Scheerer v. Hardee's Food Systems, Inc., 16 F.3d 272, 274-275 (8th Cir. 1994); Spencer v. Kroger Co., 941 F.2d 699 (8th Cir. 1991). It was also sufficient to submit to the jury the question of MDF's actual or constructive notice of the unsafe condition. In the analogous case of Spencer, where the plaintiff slipped and fell on cleaning solution on a Missouri food store floor (which the store manager claimed was dry at the time), this circuit held that

> the liability of a store owner with respect to a slip and fall case is predicated on the foreseeability of the risk

9

and the reasonableness of the care extended toward business invitees, which, in Missouri, is now a question of fact to be determined by the totality of the circumstances, including the nature of the business and the method of its operations.

Spencer, 941 F.2d at 703.  Proof of constructive notice by a showing that the hazard existed for a certain period of time is no longer required. Hammond v. Wal-Mart Stores, Inc., 971 F.2d 158, 159-160 (8th Cir. 1992) (following Spencer); Moss v. Nat'l Super Mkts., Inc., 781 S.W.2d 784, 785-786 (Mo. banc 1989) (citation omitted).

It was for the jury to evaluate the credibility of the witnesses and to determine from all of the evidence whether the dangerous condition was foreseeable and the defendant's exercise of care, reasonable.  The jury could have reasonably concluded on the evidence that a slippery wet floor by the restaurant entrance was a foreseeable dangerous condition on a day when it rained heavily during the busy customer hour when plaintiff was injured.[2]

The district court's denial of plaintiff's motion to enforce settlement without holding a hearing, and its denial of defendant's motion for judgment as a matter of law, are affirmed.

A true copy.

Attest:


CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.

---

[2] Cf. Storie v. United States, 793 F. Supp. 221 (E.D. Mo. 1992) (bench trial applying Missouri negligence law and finding that water on post office tile floor without mat was a foreseeable dangerous condition on a snowy busy day, and that warning sign in outer lobby was not reasonable care to prevent injuries in inner lobby).