# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 05-1101/05-2075

_____

| | | |
|---|---|---|
| Chaganti & Associates, P.C., | * | |
| | * | |
| Appellant, | * | |
| | * | Appeals from the United States |
| v. | * | District Court for the |
| | * | Eastern District of Missouri |
| Thomas Nowotny; Roger V. Vardeleon, | * | |
| | * | |
| Appellees. | * | |
| | * | |

_____

No. 05-2065

_____

| | | |
|---|---|---|
| In re: Chaganti & Associates, P.C., | * | |
| | * | |
| Petitioner, | * | Petition for Writ of Mandamus |
| | * | |
| | * | |

_____

Submitted: September 29, 2006
Filed:  December 5, 2006

_____

Before RILEY and COLLOTON, Circuit Judges, and KYLE[1], District Judge.

_____

[1]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota, sitting by designation.

_____

COLLOTON, Circuit Judge.

Chaganti & Associates, P.C., ("C&A"), brought an action in Missouri state court alleging that the defendants, Thomas Nowotny and Roger Vardeleon, interfered with the corporation's economic advantage, conspired to injure its business, and restrained trade. Nowotny and Vardeleon removed the case to the United States District Court for the Eastern District of Missouri, and the district court denied C&A's motion for remand.

Roughly a year and a half later, the district court found that all parties had agreed to settle the case, and granted the defendants' motion to enforce settlement. After C&A's principal, Dr. Suren Chaganti, refused to sign the settlement documents, the court held C&A in contempt of court. C&A appeals the district court's denial of remand, the grant of the defendants' motion to enforce settlement, and several other rulings. C&A also petitions for a writ of mandamus to vacate the court's contempt and sanctions order. A panel of this court consolidated these matters and granted a stay pending appeal of the district court's contempt and sanctions order. We now deny the petition for writ of mandamus and affirm all of the district court's orders, except for the order imposing sanctions for contempt of court.

I.

Chaganti and Associates, P.C., is a corporation owned entirely by Suren Chaganti ("Dr. Chaganti"), a psychiatrist. Dr. Chaganti maintained staff privileges at the St. Anthony's Medical Center in St. Louis, Missouri. While Dr. Chaganti was at St. Anthony's, the medical center's Behavioral Health Care Review Committee began an inquiry into his practice. Thomas Nowotny was chair of the Review Committee. Based on the results of the committee's inquiry, Roger Vardeleon, then

president of the St. Anthony's medical staff, sent Dr. Chaganti a letter in March 2002. The letter stated that Dr. Chaganti's staff privileges could be revoked if he did not fulfill certain certification and educational requirements. Dr. Chaganti did not fulfill these requirements, and in June 2003, the St. Anthony's Medical Executive Committee recommended that the medical center terminate Dr. Chaganti's staff privileges.

On February 20, 2003, several months before the Medical Executive Committee recommended that Dr. Chaganti's privileges be terminated, C&A filed a petition in St. Louis City Circuit Court alleging that Nowotny and Vardeleon had interfered with C&A's economic advantage, conspired to injure its business, and restrained trade. The petition did not indicate the state or federal laws on which the claims were based. On March 28, 2003, Nowotny and Vardeleon filed a motion to transfer the case within the Missouri court system to St. Louis County. In C&A's response to this motion, filed on April 4, C&A alleged for the first time that Nowotny and Vardeleon had "violated antitrust laws of the United States." Based on this allegation, Nowotny and Vardeleon filed a notice of removal in the United States District Court for the Eastern District of Missouri on April 18, 2003. C&A then moved to remand the case to state court on the ground that removal was untimely, but the district court denied the motion.

After the case was removed to federal court, Winthrop Reed, an attorney for Nowotny and Vardeleon, began to discuss the possibility of settlement with C&A's attorney, Naren Chaganti ("Naren"). According to Reed's sworn declaration, on August 25, 2004, he and Naren entered into a settlement agreement on behalf of C&A, Nowtony, Vardeleon, and St. Anthony's Medical Center. According to Reed, the agreement had the following terms: Dr. Chaganti agreed to complete specified educational requirements, dismiss this case and another he had filed in state court, sign a mutual release, and execute a letter withdrawing his application for reappointment to the medical staff at St. Anthony's. After all parties executed the mutual release, the

executed documents would be held in escrow. The Medical Executive Committee then would be notified that the matter was settled and would conclude its investigation of Dr. Chaganti. Provided that the Committee closed its investigation and determined that it was not required to report Dr. Chaganti to the National Practitioners Data Bank, the executed documents would be released from escrow.

On August 27, 2004, the parties filed a joint motion with the district court requesting an extension of time on all dates. The motion advised the court that the parties had reached an "agreement in principle," and requested additional time to conclude settlement arrangements. In September 2004, Reed drafted the documents called for by the alleged agreement and gave them to Naren for review. According to Reed's declaration, Naren approved these documents and said that Dr. Chaganti would sign them. Reed avers that on October 1, Naren informed him that Dr. Chaganti had decided that he would not withdraw his application for reappointment to St. Anthony's, and thus would not sign the settlement documents.

After Dr. Chaganti declined to sign the settlement documents, Nowotny and Vardeleon filed a motion to enforce the alleged settlement. Reed attached a sworn declaration describing the course of settlement negotiations, and he also attached the unsigned settlement documents. Chaganti's response denied that any such agreement existed. On November 30, 2004, the court held a hearing on the motion to enforce settlement, during which the court questioned Reed and Naren about their negotiations. Naren acknowledged that he had discussed the possibility of settlement with Reed, but insisted that they had reached no agreement and that he had no authority to settle the case. The court also spoke briefly with Dr. Chaganti by telephone during the hearing.

At the close of the hearing, the court ruled that Naren did have authority to enter into a settlement agreement and that he had done so. Consequently, the court granted Nowotny and Vardeleon's motion to enforce settlement and ordered Dr. Chaganti to

"execute the required documents necessary to effectuate the parties' settlement of this matter within ten (10) days." (J.A. at 336). The court also warned C&A that "[f]ailure to comply with this order may result in the imposition of sanctions." (*Id.*). Dr. Chaganti never signed any of the settlement documents, and on April 14, 2005, the court granted the defendants' motion to hold C&A in contempt, sanctioning C&A five hundred dollars per day until Dr. Chaganti signed the settlement documents. On April 15, 2005, C&A filed a petition for writ of mandamus challenging this ruling, and on August 23, 2005, we stayed the ruling pending appeal.

## II.

C&A appeals the district court's denial of its motion to remand the case to Missouri state court on the ground that removal to federal court was improper. We review *de novo* the district court's exercise of removal jurisdiction and denial of a motion to remand. *United States v. Todd*, 245 F.3d 691, 693 (8th Cir. 2001).

The federal removal statute provides that a civil defendant generally must file a notice of removal within thirty days of receiving the initial pleading setting forth the claim of relief. 28 U.S.C. § 1446(b). The statute also provides, however, that if the "case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant . . . of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." *Id*.

Under the "well-pleaded complaint rule," a case in which federal jurisdiction is based on a federal question ordinarily is not removable unless the "federal question is presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). C&A's original petition was entitled "Petition for Interference in Business Advantage; Conspiracy to Injure a Business; Unlawful Restraint of Trade." (J.A. at 19-27). It made no reference to any federal

statute and did not advance any claim that was necessarily based on federal law. The only legal citation in the petition referred to a business interference case decided by the Missouri Supreme Court under Missouri law. (*Id.* at 21, 24). The most natural reading of the petition was that it contained claims based on Missouri law. The petition did not include allegations from which the defendants reasonably should have ascertained that the case was removable.

C&A first asserted that it was advancing a federal claim on April 4, 2003, in its response to the defendants' motion to transfer. Unlike C&A's initial complaint, the response contained an explicit reference to "antitrust laws of the United States." At that point, it was clear that the petition raised a federal claim, and the thirty-day period for removal commenced at that time.

C&A contends that under the "artful pleading doctrine," the case was removable when C&A filed its petition in February. The artful pleading doctrine, a corollary to the well-pleaded complaint rule, allows a defendant to remove a case to federal court when the plaintiff has attempted to defeat removal by failing to plead a necessary federal question. *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998). "[C]ourts will not permit plaintiff to use artful pleading to close off defendant's right to a federal forum," *Federated Dep't Stores, Inc. v. Moitie*, 452 U.S. 394, 397 n.2 (1981) (internal quotation omitted), and the doctrine of artful pleading is designed to protect the right of defendants to have federal claims against them tried in federal court.

The artful pleading doctrine has no application in this case. A federal antitrust claim was not necessary to the claims alleged in C&A's petition. Unlike a state-law claim that is completely preempted by a federal statute such as ERISA, *see Rivet*, 522 U.S. at 475, a claim of "unlawful restraint of trade" may be pleaded under the laws of Missouri alone. *See* Mo. Rev. Stat. § 416.031 (2000). Until C&A's response to the motion to transfer, the defendants had no grounds to assert that the petition necessarily

involved a federal claim that permitted removal. Nowotny and Vardeleon filed their notice of removal within thirty days of the pleading that first asserted a federal antitrust claim, so the removal was timely, and the district court properly denied C&A's motion to remand.

III.

C&A also challenges the district court's order enforcing a settlement agreement between the parties. We review the court's finding that a settlement existed for clear error. *Enterprise Rent-a-Car Co. v. Rent-a-Wreck of Am., Inc.*, 181 F.3d 906, 909 (8th Cir. 1999).

Basic principles of contract formation govern the existence and enforcement of the alleged settlement, *see In re Airline Ticket Comm'n Antitrust Litig.*, 268 F.3d 619, 623 (8th Cir. 2001); *Sheng v. Starkey Labs.*, 53 F.3d 192, 194 (8th Cir. 1995), and the parties agree that Missouri law applies in this case. Under Missouri law, a valid settlement agreement need not be in writing. Unless the subject matter of the settlement is governed by the statute of frauds, a court may enforce an oral settlement agreement that contemplates the execution of documents at a later time. *Byrd v. Liesman*, 825 S.W.2d 38, 39 (Mo. Ct. App. 1992).

The essential elements of a valid settlement agreement are the involvement of parties who are competent to contract, a proper subject matter, legal consideration, mutuality of obligation, and mutuality of agreement. *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 617 (Mo. Ct. App. 1995). There is no dispute that the alleged settlement was made by parties competent to contract, and the subject matter is proper.

Consideration exists when there is a detriment to the promisee or a benefit to the promisor, *Citibank (South Dakota), N.A. v. Wilson*, 160 S.W.3d 810, 813 (Mo. Ct.

App. 2005), and mutuality of obligation exists whenever there is consideration. *State ex rel. Vincent v. Schneider*, 194 S.W.3d 853, 859 (Mo. 2006). The district court found that the agreement provided a benefit to C&A. Under the terms of the agreement, the St. Anthony's Medical Executive Committee would conclude its investigation of Dr. Chaganti, St. Anthony's would not report Dr. Chaganti's investigation or withdrawal to the National Practitioners Data Bank, and Nowotny, Vardeleon, and St. Anthony's would release all potential claims they had against C&A. The district court's finding that these provisions constituted consideration to C&A is not clearly erroneous, and as a consequence, there was also mutuality of obligation.

Mutuality of agreement requires "a mutuality of assent by the parties to the terms of the contract," i.e., a "meeting of the minds." *L.B.*, 912 S.W.2d at 617. A court should determine whether such a meeting of the minds took place by "looking to the intentions of the parties as expressed or manifested in their words or acts." *Id.* Here, the district court specifically found that there had been a meeting of the minds concerning the terms of the settlement.

We conclude that the district court's finding was not clearly erroneous. Reed and Naren undertook protracted negotiations during the summer of 2004, and Reed sent Naren a written proposed settlement on August 24, 2004. The next day, Reed and Naren met to discuss this proposal, and Reed avers that Naren explicitly agreed to the settlement agreement with the stated terms in a telephone conversation that followed the meeting. Shortly thereafter, with Naren's approval, Reed filed a joint motion with the district court stating that the parties had reached an agreement in principle. This pleading was followed by exchanges of correspondence and efforts by Reed to secure signed settlement agreements from Naren and Dr. Chaganti.

The court questioned Reed and Naren during the settlement hearing about their discussions. Naren claimed that no settlement agreement was reached and that the

exchanges in August and September were simply ongoing negotiations. Reed countered that Naren explicitly agreed to the settlement agreement with the stated terms on August 25 and confirmed that agreement multiple times over the course of the following month.

The district court then made a credibility finding, believing Reed's testimony that Naren had agreed to the settlement terms over Naren's insistence that he had not. "Credibility determinations are within the exclusive domain of the district court and are virtually unreviewable on appeal." *Enterprise Rent-a-Car*, 181 F.3d at 910 (internal quotation omitted). Given our deference to the district court's assessment of the evidence and the circumstantial evidence supporting it, we conclude that the court's finding of a settlement agreement was not clearly erroneous.

C&A argues that even if its attorney, Naren, did enter into a settlement agreement, he had no authority to do so, and that the agreement thus does not bind the corporation. Under Missouri law, an attorney cannot enter into a settlement agreement that binds a client unless that client gives the attorney authority to do so. *McDowell v. Kearns*, 758 S.W.2d 481, 482-83 (Mo. Ct. App. 1988). A court, however, will presume that an attorney has the necessary authority if the attorney's statements or conduct imply the authority to settle. *Id.* The client then has the burden of proving that the attorney acted without authority. *Id.*

Here, the district court found, without clear error, that Naren agreed to settle the lawsuit. C&A has not presented compelling evidence to overcome the presumption under Missouri law that Naren's acts demonstrate his authority to bind his client. The district court, moreover, examined Naren and declined to credit his assertion that he lacked the necessary authority. Accordingly, we hold that the court's finding that Naren had authority to enter into the settlement is not clearly erroneous.

C&A also mounts a procedural challenge to the district court's ruling, asserting that the motion to enforce the settlement agreement was granted without an adequate evidentiary hearing. C&A argues that because only the lawyers, and not the parties, were present at the hearing, it was unable to present its evidence that no settlement agreement was reached.

"As a general rule, an evidentiary hearing should be held when there is a substantial factual dispute over the existence or terms of a settlement." *Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251 (8th Cir. 1996). A court, however, need only hear so much evidence as is necessary for it to resolve the "essential issues of fact" concerning the settlement. *Id.* When deciding whether to hold a hearing, a court may also consider the need to conserve judicial resources and "the unseemliness of holding, in effect, a mini-trial to resolve a dispute between attorneys arising from their oral settlement talks." *Id.* at 252. Accordingly, when "the parties' counsel [are] the sole witnesses to their own conversations," the court may properly determine whether a settlement exists by relying exclusively on the representations of counsel. *Id.*

In this case, there was a factual dispute over the existence of the settlement, and the district court properly held a hearing on November 30, 2004. The essential issues of fact were whether Naren, C&A's attorney, had agreed to settle the case, and, if so, whether Naren had the authority to enter into a settlement agreement. The first issue depended principally on what occurred during the settlement negotiations between the lawyers. Reed and Naren described those discussions at length during the hearing. The court properly resolved the dispute about the existence of an agreement based on its evaluation of the representations of counsel. *Stewart*, 83 F.3d at 252. As to the second issue, the court's finding that Naren agreed to settle the case created a presumption that he had authority to do so. *McDowell*, 758 S.W.2d at 482-83. C&A bore the "heavy burden" to rebut this presumption, *Greater Kansas City Laborers Pension Fund v. Paramount Indus.*, 829 F.2d 644, 646 (8th Cir. 1987), and it had notice of the hearing and an opportunity to present evidence. Dr. Chaganti could have

appeared in person if he so desired. Although it had no obligation to do so, the district court even took the initiative to contact Dr. Chaganti by telephone during the hearing so that he could address the disputed issues. Thus, C&A had a fair opportunity to make its case to the court concerning the essential issues of fact – whether Naren made an agreement and whether he had authority to do so – and we perceive no procedural flaw in the district court's handling of the matter.

IV.

C&A also challenges the district court's order holding the corporation in civil contempt and imposing sanctions. The district court retained jurisdiction to enforce its judgment notwithstanding C&A's appeal on the merits, *see In re Grand Jury Subpoenas Duces Tecum*, 85 F.3d 372, 375-76 (8th Cir. 1996), so we reject the contention that the district court lacked jurisdiction to enter the contempt order. The district court denied C&A's motion to stay the order enforcing the settlement, and absent a stay from an appellate court, the district court was within its authority to enforce the order. On the merits, we review a district court's imposition of a civil contempt order and assessment of monetary sanctions for abuse of discretion. *Warnock v. Archer*, 443 F.3d 954, 955 (8th Cir. 2006).

C&A contends that it did not receive prior notice that failure to comply with the court's order enforcing the settlement may result in contempt sanctions. We are not persuaded by this complaint, because the court specifically advised C&A that it would be subject to sanctions if it failed to comply. (J.A. at 336). C&A also argues that the terms of the order enforcing the settlement were too vague to justify holding C&A in contempt for failing to comply. A contempt order must be based on a party's failure to comply with a "clear and specific" underlying order. *Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp.*, 293 F.3d 409, 418 (8th Cir. 2002). In this case, the underlying order to enforce settlement provided that "plaintiff shall execute the required documents necessary to effectuate the parties' settlement of this matter

within ten (10) days from the date of this order. Failure to comply with this order may result in the imposition of sanctions." (J.A. at 336).

Although the order did not specifically identify the "required documents," the meaning should have been clear to C&A based on previous pleadings in the case and the discussions at the hearing concerning enforcement of the settlement. Nowotny and Vardeleon attached the proposed settlement documents to their motion to enforce settlement, which was granted by the district court. Reed gave Naren copies of these documents months prior to the hearing on November 30, 2004. During the course of the hearing, Reed briefly summarized the terms of the settlement, and mentioned each of the attached documents. Naren also referred to the attached documents during the hearing. Thus, when the court granted the motion to enforce settlement and ordered C&A to execute the "necessary" settlement documents, there was no reasonable basis for C&A or Dr. Chaganti to doubt what documents had to be signed. We thus conclude that the district court's settlement order had the clarity and specificity required to be enforced by contempt sanctions.[2]

On this record, however, we are unable to uphold the district court's imposition of monetary sanctions. A district court may impose civil contempt sanctions for one of two purposes:  to compensate parties aggrieved by contumacious conduct or to coerce compliance with the court's orders. *United States v. United Mine Workers*, 330 U.S. 258, 303 (1947). When a sanction is designed to coerce a recalcitrant party to comply, the sanction should be payable to the court, rather than to the opposing

---

[2]Even if the terms of the settlement had been uncertain, moreover, C&A had an obligation to seek clarification of the court's order. "[A] party to an action is not permitted to maintain a studied ignorance of the terms of a decree in order to postpone compliance and preclude a finding of contempt." *Perfect Fit Indus., Inc. v. Acme Quilting Co., Inc.*, 646 F.2d 800, 808 (2d Cir. 1981). If the court's order was vague, then C&A should have requested additional guidance from the court. By failing to do anything, C&A violated the order.

party. *Hicks on Behalf of Feiock v. Feiock*, 485 U.S. 624, 632 (1988). The court should determine the amount of the sanction only after considering "the character and magnitude of the harm threatened by continued contumacy," "the probable effectiveness of any suggested sanction in bringing about the result desired," and "the amount of [the contemnor's] financial resources and the consequent seriousness of the burden" to that particular party. *United Mine Workers*, 330 U.S. at 304.

In this case, the district court imposed a fine of $500 for each day that Dr. Chaganti failed to sign the settlement documents. Although the daily nature of the sanction suggests that it may have been designed to coerce compliance, *see Int'l Union v. Bagwell*, 512 U.S. 821, 829 (1994), the court's order is not clear that coercion was the sole purpose of the sanction. Appellees assert, to the contrary, that the sanction is "remedial in nature" and payable to them, rather than to the court. (Resp. Opp. to Pet. for Writ of Mandamus, at 12). Nor does the court's order explain whether it considered the factors that bear on the appropriate amount for a sanction, *see United Mine Workers*, 330 U.S. at 304, or how the court arrived at the sum of $500 per day. On remand, therefore, if C&A does not promptly comply with the court's order to effectuate the settlement, the court should specify whether the monetary sanctions are compensatory or coercive in nature, and explain the basis for whatever amount is ordered. *See In re Chase & Sanborn Corp.*, 872 F.2d 397, 401 (11th Cir. 1989).

## V.

C&A raises several other issues, namely, that the district court erred in dismissing its state antitrust claims, in denying its motion to amend its petition, and in quashing its subpoenas. Because we uphold the district court's order enforcing settlement of all claims, these issues are moot. We reject C&A's request that the case be reassigned to a different judge on remand, as nothing in the record supports the

assertion that the district court's impartiality may reasonably be questioned.  We also deny C&A's motion to strike the brief of the appellees.

*      *      *

For these reasons, we deny the petition for writ of mandamus and affirm all orders of the district court, except for the order imposing sanctions for contempt of court, which is vacated.  The case is remanded for further proceedings consistent with this opinion.

_____