# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 07-3042/08-1757

_____

| | | |
|---|---|---|
| Bath Junkie Branson, L.L.C.; | * | |
| Gloria R. Arney, | * | |
| | * | |
| Appellees, | * | |
| | * | |
| v. | * | |
| | * | |
| Bath Junkie, Inc.; Bath Junkie | * | Appeals from the United States |
| Distribution, Inc.; Bath Junkie | * | District Court for the |
| Franchise, Inc.; Bath Junkie | * | Western District of Missouri. |
| Corporate Store, Inc.; Zimmerelli, | * | |
| LLC; Bath Deli, Inc.; Judy | * | |
| Zimmer; Jon Zimmer; Jocelyn | * | |
| Morelli; Steven Kay, | * | |
| | * | |
| Appellants. | * | |

_____

Submitted: April 18, 2008
Filed: June 9, 2008

_____

Before GRUENDER, BRIGHT and BENTON, Circuit Judges.

_____

GRUENDER, Circuit Judge.

The sole issue on appeal is whether the district court[1] abused its discretion in refusing to grant the appellants' ("Franchisors") motion for an evidentiary hearing, a motion they presented for the first time after the district court announced its intention to enforce a settlement agreement between Franchisors and the appellees ("Franchisees"). For the reasons stated below, we affirm.

## I.    BACKGROUND

Franchisees sued Franchisors on federal and state claims with respect to a Bath Junkie, Inc. ("Bath Junkie") franchise. The parties informed the court that they had reached a settlement agreement the day before the trial was scheduled to begin. Tom Morris negotiated on behalf of Franchisors, and David Morris negotiated on behalf of Franchisees. Others involved in the negotiations on Franchisors' behalf included attorney Jenni Cook, Bath Junkie corporate counsel Steven Kay, and Bath Junkie President Judy Zimmer.

On February 22, 2007, the parties made a record of the settlement in front of the district court. David Morris recited what he characterized as the "salient provisions" of the agreement, which included the total payment by Franchisors to Franchisees of $95,000, a payment schedule, interest on any delinquent payments and reductions for any early payments, the entry of a consent judgment reflecting the payment terms, execution of a settlement agreement containing mutual releases, and the dismissal of Franchisors' counterclaims. Tom Morris stated, on the record, "I agree with it all. It sounds exactly like what we agreed to." Neither party suggested that the settlement agreement included any additional terms. The parties agreed to file a proposed consent judgment by February 28.

---

[1]The Honorable Richard E. Dorr, United States District Judge for the Western District of Missouri.

David Morris and Tom Morris failed to finalize a written settlement agreement after exchanging several drafts, and they failed to file a proposed consent judgment. After this point, David Morris was no longer involved in the case, and neither party maintained contact with him.

On June 15, the district court ordered the parties to show cause why the lawsuit should not be dismissed with prejudice. Franchisees filed a motion to enforce the settlement based on the proceedings before the district court on February 22 and requested oral argument. Franchisors filed a Response to Plaintiff's Motion to Enforce Settlement ("Response"). Franchisors did not request either oral argument or an evidentiary hearing, but they did attach affidavits from Tom Morris, Cook, Kay and Zimmer. These affidavits attested to the substance of the negotiations that occurred before the February 22 hearing, which they aver also included agreements about confidentiality, non-disparagement and non-disclosure, none of which were included in the "salient" terms identified to the district court. All four affidavits also claimed that the parties had agreed to structure the settlement as a franchise sale and repurchase and that this "franchise sale language" was necessary to avoid Franchisors' obligation under 16 C.F.R. § 436.5(c) to report a judgment against it in its Uniform Franchise Offering Circular. Under the franchise sale language, Franchisors claimed that the parties had agreed that Franchisors would grant Franchisees four franchises, agree to sell those franchises on Franchisees' behalf and then pay Franchisees $95,000 in accordance with the payment schedule. The affidavits also alluded to the exchange of drafts of the settlement agreement after the February 22 hearing, but Franchisors did not provide any of the exchanged draft agreements to the district court. Relying on these affidavits, Franchisors claimed that the parties had earlier reached an agreement that contained terms in addition to those detailed on the record before the district court. Because Franchisees wanted to enforce the settlement agreement as represented to the court on February 22, which differed from the agreement Franchisors believed they had reached during negotiations, Franchisors argued that

there must not have been a meeting of the minds as to the settlement and that the Franchisees' motion, therefore, should be denied. Franchisors asked the district court to reschedule the matter for trial.

On July 27, 2007, the district court issued a written order announcing its intent to enforce the settlement agreement and ordering the parties to advise the court whether the judgment should be filed under seal. On July 31, Franchisors, for the first time, requested an evidentiary hearing on Franchisees' motion to enforce the settlement. Franchisors also advanced a new argument in their request for an evidentiary hearing. In addition to asking the district court to hold an evidentiary hearing to determine whether there was a meeting of the minds, they also requested the court to determine the terms of the settlement agreement, if it concluded there was a meeting of the minds. On August 1, the district court entered judgment under seal enforcing the settlement agreement as it was detailed by the parties during the February 22 proceedings. Franchisors appealed the district court's refusal to hold an evidentiary hearing.

Franchisors submitted their opening brief to this court on December 7, 2007. After their initial brief had been filed, Franchisors located David Morris, and Cook met him in Dallas, Texas, on December 10. Franchisees submitted their brief on January 9, 2008. On February 14, Cook completed an affidavit in which she claimed that during her meeting with David Morris, he acknowledged that he never thought that the franchise sale language would be a "big deal" and that additional terms were to be included in the written settlement agreement. Franchisors submitted this affidavit and copies of four draft settlement agreements, alleged to have been exchanged by the parties, to this court in a supplemental appendix on February 19 and relied upon them for arguments made in their reply brief. Franchisees moved to strike the supplemental appendix and Franchisors' reply brief.

-4-

In addition to this appeal, Franchisors appeal the district court's order denying their motion to stay execution of the judgment and granting Franchisees' motion to allow the judgment to be registered and enforced in other United States district courts notwithstanding the pending appeal. We have consolidated the two appeals. Finally, Franchisors filed a motion with this court to stay execution of the judgment.

## II.     DISCUSSION

### A.      Motion to Strike

After both parties had filed their initial briefs, Franchisors submitted a supplemental appendix containing four draft settlement agreements and Cook's affidavit concerning her meeting with David Morris, none of which were part of the record before the district court. Franchisees move to strike the appendix and Franchisors' reply brief that relied upon the supplemental appendix. "An appellate court can properly consider only the record and facts before the district court and thus only those papers and exhibits filed in the district court can constitute the record on appeal." *Huelsman v. Civic Ctr. Corp.*, 873 F.2d 1171, 1175 (8th Cir. 1989); *see* Fed. R. App. P. 10(a). Because the drafts of the settlement agreement and the second Cook affidavit were presented for the first time at the appellate stage, they are not part of the record for our review. *See Huelsman*, 873 F.2d at 1175. "[W]e cannot consider it as evidence . . . ." *Id.* Because we cannot consider this evidence, we grant Franchisees' motion to strike the supplemental appendix and the reply brief to the extent that its arguments rely on evidence that had not been presented to the district court.

### B.      Evidentiary Hearing

We now examine the record before the district court, and we review its decision not to hold an evidentiary hearing for abuse of discretion. *See Stewart v. M.D.F., Inc.*, 83 F.3d 247, 251–52 (8th Cir. 1996). District courts are given "considerable

discretion" in deciding whether to hold an evidentiary hearing. *Id.* at 251; *see Chaganti & Assocs., P.C., v. Nowotny*, 470 F.3d 1215, 1223 (8th Cir. 2006) ("When deciding whether to hold a hearing, a court may also consider the need to conserve judicial resources and the unseemliness of holding, in effect, a mini-trial . . . .") (internal quotation omitted). "When a motion is based on facts not appearing of record, Fed. R. Civ. P. 43[] provides that a district court 'may hear the matter on affidavits presented by the respective parties,' or 'may direct that the matter be heard wholly or partly on oral testimony or deposition.'" *Stewart*, 83 F.3d at 251.

Franchisors did not request an evidentiary hearing until after the district court had considered the arguments and the affidavits in Franchisors' Response and issued an order stating its intent to enforce the settlement agreement.[2] Franchisors should have requested an evidentiary hearing to introduce evidence "outside the record" under Federal Rule of Civil Procedure 43(c) before the district court announced its decision to enforce the settlement agreement. In *Vaughn v. Sexton*, we rejected the argument that the district court should have held an evidentiary hearing when the party's original filing did not contain "any request for an evidentiary hearing or even the suggestion that the submission of additional evidence, beyond that accompanying the motion, would be necessary or helpful." 975 F.2d 498, 505 (8th Cir. 1992). Eventually, after the district court made its decision, the party seeking an evidentiary hearing filed an untimely request, which the district court denied. *Id.* We concluded that "[u]nder these circumstances, we hold that the trial court was well within its discretion to act on the original motion without giving the defendants an evidentiary hearing." *Id.* (citing rule amended as Fed. R. Civ. P. 43(c)).

---

[2]While we need not decide whether the district court's July 27 order indicating its intent to enter an order enforcing the settlement agreement is a "final order," we note that the district court made an unequivocal statement that it had decided to grant Franchisees' motion to enforce, and its only remaining task, entering the judgment, was "ministerial." *See Minnesota v. Kalman W. Abrams Metals, Inc.*, 155 F.3d 1019, 1023 (8th Cir. 1998).

In this case, Franchisors' Response did not request an evidentiary hearing. Even without a formal evidentiary hearing, Franchisors had the opportunity to present additional evidence, which they did by submitting the four affidavits attached to their Response. The district court considered the Response and decided to enforce the settlement agreement. After the district court made its decision, it asked the parties whether the judgment should be filed under seal, and Franchisors responded with the unresponsive and untimely request for an evidentiary hearing. We conclude that, as in *Vaughn*, the district court had no basis to believe that either party desired an evidentiary hearing or had even suggested that the submission of additional evidence, beyond that accompanying their motions, would be necessary or helpful. Under these circumstances, the district court's decision not to hold an evidentiary hearing was not an abuse of discretion.[3]

Franchisors essentially argue that the district court should have held an evidentiary hearing sua sponte before it decided to enforce the settlement agreement. We examine whether the district court's failure to hold an evidentiary hearing sua sponte constitutes plain error. We may correct the error where there is "(1) error, (2) that is plain, and (3) that affects substantial rights" and if "(4) the error seriously affects the fairness, integrity, or public reputation of the judicial proceeding." *United States v. Rice*, 449 F.3d 887, 894 (8th Cir. 2006) (quotations omitted); *see Champagne v. United States*, 40 F.3d 946, 947 (8th Cir. 1994) (applying plain error in a civil case). We conclude that there was no error.

---

[3]Franchisors argue that they relied upon Franchisees' request for oral argument and "assumed" that they would receive oral argument. Franchisors never requested oral argument in their Response. Regardless, oral argument on a motion does not encompass the ability to introduce new evidence, and it is the default rule before this district court that motions will be ruled upon without oral argument. *See* W.D. Mo. Local R. 7.1(b), (g); *cf. Eaton v. Mallinckrodt, Inc.*, 224 S.W.3d 596, 599 (Mo. 2007) (holding that a trial court may enforce a settlement agreement upon the motions and "oral argument" without accepting new evidence).

"[A]s a general rule, an evidentiary hearing should be held when there is a substantial factual dispute over the existence or terms of a settlement." *Stewart*, 83 F.3d at 251. "But this rule presupposes that there are essential issues of fact that can only be properly resolved by such a hearing." *Id.* Based on the record before the district court, there was no substantial factual dispute over the settlement agreement, and the district court did not err by deciding not to hold an evidentiary hearing sua sponte.

"The essential elements of an enforceable contract are parties competent to contract, a proper subject matter, legal consideration, mutuality of agreement, and mutuality of obligation." *L.B. v. State Comm. of Psychologists*, 912 S.W.2d 611, 617 (Mo. Ct. App. 1995).[4] "The nature and extent of a contract's essential terms which form the basis of the parties' mutual assent must be certain or capable of being certain." *Id.* "Under the objective theory of contracts applied in Missouri since 1892, the stress is on the outward manifestation of assent made to the other party . . . ." *Don King Equip. Co. v. Double D Tractor Parts, Inc.*, 115 S.W.3d 363, 369 (Mo. Ct. App. 2003). "The mutuality or meeting of minds is to be determined by the expressed, and not by the secret, intention of the parties." *Butler v. Mo. Ins. Co.*, 187 S.W.2d 56, 60 (Mo. Ct. App. 1945).

"An open court stipulation as to a settlement agreement 'is a contract but made with more solemnity and with better protection to the rights of the parties than an ordinary contract made out of court.'" *Vulgamott v. Perry*, 154 S.W.3d 382, 391 (Mo. Ct. App. 2004) (quoting *Fair Mercantile Co. v. Union-May-Stern Co.*, 221 S.W.2d 751, 755 (Mo. 1949)). "Any reservation or limitation as to the scope of a settlement agreement must be clearly expressed." *Fiegener v. Freeman-Oak Hill Health Sys.*, 996 S.W.2d 767, 773 (Mo. Ct. App. 1999) (quoting *Angoff v. Mersman*, 917 S.W.2d

[4]Both parties rely on Missouri law, and consequently we assume that Missouri law controls. *See Harris v. Brownlee*, 477 F.3d 1043, 1047 n.2 (8th Cir. 2007).

207, 211 (Mo. Ct. App. 1996)). "[W]e cannot be concerned with what [the parties] may have subjectively intended to say." *Fiegener*, 996 S.W.2d at 773.

We believe that *Fiegener*, which involved a settlement agreement in a medical negligence lawsuit, is most analogous. There, the parties made a record before the court of a "high-low" settlement agreement at 11:30 p.m., while the jury was deliberating.[5] *Id.* at 769–70. At 11:48 p.m., the parties again went on the record, and some of the defendants clarified that they had intended only to accept a limited percentage of net fault assessed to them. *Id.* at 770. The Missouri Court of Appeals held that the settlement agreement "was not ambiguous and did not lack any essential contractual elements." *Id.* at 772. There was "no indication that [the] clients intended to limit the scope of the settlement as [the attorney] contended at 11:48 p.m." *Id.* at 773. Although the parties supplemented the record with this 11:48 p.m. statement and with subsequent depositions, the "unilateral act of supplementing the record cannot alter the terms of the contact entered into earlier." *Id.* "At best, [the attorney's] actions belatedly revealed the subjective intent of his client." *Id.* Therefore, even if a party may have subjectively believed that it had outstanding important contractual terms, a court will still enforce a settlement agreement that the record reflects contains all material terms. *See, e.g.*, *Chaganti*, 470 F.3d at 1223; *Vulgamott*, 154 S.W.3d at 391.

In this case, the district court considered Franchisors' affidavits and argument that the parties failed to reach an agreement, but it also had the benefit of counsel for Franchisees identifying all "salient" terms of their settlement agreement on the record before the court and counsel for Franchisors explicitly agreeing, without qualification,

---

[5]A "high-low" settlement is an agreement that the plaintiff will recover no less than a certain amount and no more than a certain amount no matter what the jury actually awards. If, however, the jury award is within that range, the plaintiff recovers the amount of the jury award.

to the terms of the settlement.[6] The record reflects the parties' objective mutual assent to enter a settlement agreement with all the material terms identified to the court and no suggestion that additional terms had been agreed to or were subject to further negotiation. Franchisors' attempt to supplement the record after the fact does not alter the content of the agreement on the record. The parties agreed to the material terms of the settlement agreement, and the settlement agreement was capable of being enforced. *See L.B.*, 912 S.W.2d at 617. Because there was no substantial factual dispute, the district court's decision to resolve the matter on affidavits without an evidentiary hearing was not error, much less plain error.[7]

---

[6]"Salient" is defined as "[s]tanding out from the rest; prominent, conspicuous." *Oxford English Dictionary* (2d ed. 1989). A "material term" is defined as "[a] contractual provision dealing with a significant issue such as subject matter, price, [or] payment." *Blacks Law Dictionary* 1510 (8th ed. 2004). While "salient term" is not generally a legal term of art, its use in contract cases is not unprecedented. *See, e.g.*, *Old Reliable Fire Ins. Co. v. Castle Reinsurance Co., Ltd.*, 665 F.2d 239, 242 n.4, 244 (8th Cir. 1981) (concluding that Missouri reinsurance proposal contained all "salient terms"); *Cooper v. Jensen*, 448 S.W.2d 308, 310 (Mo. Ct. App. 1969) (discussing the "salient terms" of a contract). Terms that are not salient, by contrast, would be inconspicuous or lack prominence, which means that they would be insignificant or immaterial.

[7]We also note that some of Franchisors' alleged omitted terms are inconsistent with the terms of the settlement agreement as it was disclosed to the court on February 22. We fail to see how the franchise sale language could be consistent with a payment schedule contained in a consent judgment. A consent judgment would allow a party, under certain circumstances, to satisfy the judgment by attaching and seizing assets of the other party. It is significantly different than an agreement to sell and later repurchase four franchises. In addition, the entry of a consent judgment is inconsistent with the stated purpose of the franchise sale language, avoiding the requirement of reporting a judgment against a franchisor in its Uniform Franchise Offering Circular. *See* 16 C.F.R. §§ 436.5(c)(1)(ii), (3)(ii) (requiring that "a party to any material civil action involving the franchise relationship" must disclose "the date when judgment was entered and any damages or settlement terms").

In summary, Franchisors failed to make a timely request for an evidentiary hearing, and their Response did not suggest that additional evidence would be useful. The district court did not plainly err by failing to hold an evidentiary hearing sua sponte because the parties' open court agreement purported to contain all material terms and there was no substantial factual dispute over the terms of the settlement agreement. The district did not abuse its discretion by not conducting an evidentiary hearing.

Franchisors also appeal the district court's order denying their motion to stay execution of the August 1 judgment enforcing the settlement agreement and granting Franchisees' motion to allow the judgment to be registered and enforced in other United States district courts notwithstanding the pending appeal. Because we now affirm the district court's decision to enforce the settlement agreement without an evidentiary hearing, we also affirm the district court's decision to deny the motion to stay execution of the judgment and to grant the motion allowing the registration and enforcement of the judgment.[8]

## III. CONCLUSION

Accordingly, we affirm both the district court's decision not to hold an evidentiary hearing and its denial of the motion to stay execution of the judgment.

BRIGHT, Circuit Judge, dissenting.

I respectfully dissent.

---

[8]For the same reasons, we also deny Franchisors' motion to stay execution of the judgment.

The district court should have held an evidentiary hearing to determine if the parties entered into an enforceable settlement agreement. Failure to do so was an abuse of discretion.

The majority opinion ignores our Circuit's rule that "an evidentiary hearing should be held when there is a substantial factual dispute over the existence *or terms* of a settlement." Stewart v. M.D.F., Inc., 83 F.3d 247, 251 (8th Cir. 1996); Sheng v. Starkey Laboratories, Inc., 53 F.3d 192, 194 (8th Cir. 1995) ("As a general rule, when the parties dispute the existence or terms of a settlement agreement, the parties *must* be allowed an evidentiary hearing.") (emphasis added). This is exactly the case here.

The majority claims that there was no substantial factual dispute sufficient to warrant a hearing. I disagree. The majority's contention is belied by the record. The affidavits and briefs, submitted to the district court in response to Franchisees' motion to enforce the settlement, clearly established that during the settlement negotiations certain terms were discussed – terms which the Franchisors claim Franchisees' counsel agreed to. While they were not the "salient" terms entered on the record on February 22, 2007, there was a substantial dispute over whether those terms were "material" to the parties' agreement. In short, there was a clear disagreement as to the essential issue of whether there was a meeting of the minds, in the sense that the parties had reached a complete agreement.

The district court therefore abused its discretion in enforcing the settlement agreement when  there was  a substantial  factual  dispute  over  the  terms  of  the

agreement.  I would reverse and remand with instructions that the district court hold an evidentiary hearing.[9]

––––––––––––––––––––––

––––––––––––––––

[9]The majority has refused to consider the Franchisors' supplemental appendix. The material therein discloses that the Franchisors' claim of no complete agreement is supported by statements in a proposed agreement submitted by Franchisees' original counsel.  This information should have been disclosed by plaintiffs' counsel in response to the order to show cause issued by District Judge Richard E. Dorr.

Judge Dorr is an able and careful judge.  If the information disclosed to this court in the supplemental appendix had been submitted to the district court, its ruling may well have been different.  I believe on remand that important information should be brought before Judge Dorr in appropriate proceedings.