# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3077

_____

Federal Trade Commission,                          *
                                                   *
            Plaintiff/Appellee,                    *
                                                   *
United States of America,                          *
                                                   *
            Intervenor Plaintiff,                  *
                                                   *
      v.                                            *    Appeal from the United States
                                                   *    District Court for the
Richard C. Neiswonger, individually                *    Eastern District of Missouri.
and as an officer of each corporate                *
defendant doing business as Marketing              *
Systems,                                           *
                                                   *
            Defendant/Appellant,                   *
                                                   *
SKGroup Inc.; Shapiro, Kossmeyer &                 *
Flom, PC, doing business as SKPC;                  *
Carl F. Kossmeyer, individually and as             *
an officer of SKGroup, Inc. – Shapiro,             *
Kossmeyer & Flom, PC; Medical                      *
Recovery Service, Inc.; Nancy Freeman,             *
individually and as an officer of                  *
Medical Recovery Service, Inc.; Marc               *
Freeman, individually and as an officer            *
of Medical Recovery Service, Inc.,                 *
                                                   *
            Defendants,                            *
                                                   *
William S. Reed,                                   *
                                                   *
            Defendant/Appellant,                   *

Asset Protection Group, Inc.,      *
                          *

         Defendant,        *
                          *

Robb Evans & Associates, LLC,    *
                          *

         Receiver.         *

_____

Submitted: April 16, 2009
Filed: September 9, 2009

_____

Before RILEY, BENTON, and SHEPHERD, Circuit Judges.

_____

RILEY, Circuit Judge.

Richard Neiswonger (Neiswonger) appeals the district court's[1] entry of a civil contempt order against Neiswonger for Neiswonger's violations of a prior permanent injunction, enjoining him from using deceptive and misleading sales practices. Neiswonger claims the district court erred in denying Neiswonger's motion for a separate hearing on the issues of damages and disgorgement of profits and also raises sufficiency of the evidence and other issues. For the reasons stated in this opinion, we affirm.

## I.    BACKGROUND

In November 1996, the FTC brought an action against Neiswonger and others, seeking to enjoin Neiswonger from using deceptive and misleading practices in the sale of business opportunity programs. In 1997, the parties stipulated to the entry of a permanent injunction, enjoining Neiswonger and his co-defendants from making

_____

[1]The Honorable Stephen N. Limbaugh, Sr., United States District Judge for the Eastern District of Missouri, now retired.

misrepresentations and omissions of material fact in the advertising, marketing and sale of business opportunity programs. Neiswonger paid $425,000 in redress to the FTC.

In a separate criminal proceeding, Neiswonger pled guilty to wire fraud and money laundering in connection with the sale of the business opportunity programs and was sentenced to 18 months imprisonment. Later, a civil forfeiture action was initiated against Neiswonger after it was determined Neiswonger failed to disclose, during plea negotiations, approximately $1.3 million in proceeds from the deceptive business opportunity scheme. Neiswonger settled for a $750,000 forfeiture to the government.

Neiswonger and William Reed (Reed)[2] became business partners and formed a company called Asset Protection Group, Inc. (APG), which began operation after Neiswonger was released from prison. In exchange for paying a $9,800 "performance deposit," APG offered consumers the opportunity to become certified "asset protection consultants" (APG consultants). The function of an APG consultant was to market and sell APG's services to clients seeking to protect their assets. APG's asset protection services included (1) the creation of Nevada corporations, and (2) the formation of "offshore corporation[s] from the Commonwealth of the Bahamas, with a corporate brokerage account in the Cayman Islands."

APG consultants were told their "performance deposits" would be "100 percent REFUNDED . . . at a rate of a $100 bonus per Nevada Corporation and a $250 bonus per Bahamas Corporation" the consultant placed. In addition, APG's marketing literature claimed APG consultants could expect to make "very substantial profits"

---

[2]Reed was a Colorado attorney. The Colorado Supreme Court suspended Reed's license in 1997 after finding Reed "engaged in misrepresentations and dishonesty." Colorado v. Reed, 942 P.2d 1204, 1205 (Colo. 1997). Reed authored a book called Bulletproof Asset Protection, which provided advice on protecting assets from judgments, creditors, and government agencies.

and would have "6-figure income potential, from, less than full-time schedule." The literature explained APG consultants earned an average of $1,700 to $6,400 per client, and offered to arrange appointments for APG consultants "with new, good prospective clients." APG placed advertisements in The Wall Street Journal and USA Today, and paid for advertisements during the radio shows of Larry King, Rush Limbaugh, Bill O'Reilly, and Charles Osgood.

In July 2006, the FTC filed a motion requesting the district court to order Neiswonger, Reed, and APG (collectively, defendants) "to show cause why they should not be held in contempt" for violations of the 1997 permanent injunction. The FTC sought injunctive and compensatory relief and disgorgement of profits obtained from the deceptive business practices. The FTC claimed "APG consultants have suffered considerable losses or have not seen earnings even close to those touted," and "it is extraordinarily unlikely that consumers will earn a substantial or 'six-figure' income as APG consultants." Thus, the FTC claimed the defendants were "making false and misleading income claims" in violation of the permanent injunction. The FTC also claimed the defendants were in violation of the permanent injunction for failure to disclose material facts, including (1) the fact APG was using paid references to promote its program without disclosing this fact to consumers, and (2) Neiswonger's prior civil forfeiture for deceptive practices and his criminal convictions. Finally, the FTC alleged Neiswonger violated the permanent injunction "by failing to report his affiliation with APG to the FTC, and by failing to provide the FTC with proof of a current $100,000 performance bond before promoting the APG program over the past two years."

The FTC also filed a motion for a temporary restraining order and other ancillary equitable relief, which the district court granted, enjoining the defendants from further violations of the permanent injunction, freezing the defendants' individual and corporate assets, and appointing a temporary receiver to assume control of APG. The district court also ordered the defendants to appear before the court to

show cause why it should not enter a preliminary injunction pending the outcome of the FTC's motion seeking to hold the defendants in civil contempt.

The district court convened a two-day hearing on October 25, 2006. The FTC presented testimony from five witnesses: an FTC investigator, three consumers who had become APG consultants and incurred losses, and a representative of the receiver. The FTC also presented deposition testimony and declarations of various other consumers. Only Neiswonger testified for the defendants. The receiver prepared a report, which was admitted into evidence. According to the report, of the 1,930 individuals who became APG consultants, only 121 (6.3%) sold enough corporations to earn back their initial $9,800 payment. Approximately 94% of the 1,930 consultants either did not sell a single corporation or did not sell enough corporations to earn back their $9,800 payment. APG's records indicated the defendants' gross sales from the APG consultant program were approximately $19.8 million.

The FTC moved to admit a document into evidence that purported to calculate the income Neiswonger had received from his involvement in APG. Defendants objected to the admission of the document, contending it was a self-serving document that was generated at the request of the FTC, was missing information, and contained unauthenticated information. Defendants also claimed the document was inadmissible as a summary exhibit because the document and the underlying data were not made available to defendants. The FTC claimed the underlying information came from the data maintained by and accessible to the defendants, and the FTC had attempted to email the document the previous week, but there had been a computer problem on the defendants' end of the transmission. The district court suggested, in light of defendants' objections, that the hearing may need to be postponed to give the defendants adequate time to review the contested document and the underlying data. Defendants withdrew their objection, stating they did not wish to postpone the hearing, and the district court received the document subject to the defendants' other objections. The representative of the receiver estimated Neiswonger's income from sales of the APG program was $3,089,000, and Reed's income was approximately

$4,900,000. The defendants declined to cross-examine the representative of the receiver.

On April 23, 2007, the district court entered an order, finding Neiswonger in contempt for several violations of the 1997 permanent injunction. The district court also found Reed and APG in contempt for acting in concert and participating with Neiswonger in violations of the permanent injunction. The district court modified the permanent injunction, banning Neiswonger "from marketing and selling business opportunity programs in the future." The court determined it was appropriate to wait to levy a compensatory sanction until the receiver submitted a final computation of Neiswonger's and Reed's proceeds.

In March 2008, the receiver submitted the final computation of Neiswonger's proceeds. The receiver determined Neiswonger had obtained $3,213,719.13 in connection with the APG program. On April 11, 2008, Neiswonger moved to exclude the report and requested an evidentiary hearing. The district court denied Neiswonger's motion, finding the receiver "filed an exhaustive report" at the direction of the district court, the defendants "had a full and complete opportunity to challenge the evidence and testimony presented at the prior contempt hearing but chose not to do so," and "[i]t would be nothing less than an unnecessary delay to hold a new hearing on the disgorgement amount" because there was "no genuine dispute of material fact regarding the final accounting of the disgorgement amount." The district court entered an amended civil contempt order on July 30, 2008, using the receiver's final computation as the compensatory sanction. Neiswonger appeals.

## II.    DISCUSSION
### A.    Standard of Review

"[W]e review a district court's imposition of a civil contempt order and assessment of monetary sanctions for abuse of discretion." Chaganti & Assocs., P.C. v. Nowotny, 470 F.3d 1215, 1223 (8th Cir. 2006) (citation omitted). The district

court's factual findings underlying that decision are reviewed for clear error. Warnock v. Archer, 443 F.3d 954, 955 (8th Cir. 2006) (citation omitted).

### B. Due Process

Neiswonger first asserts he was not afforded due process of law during the civil contempt proceedings because the district court issued the civil contempt order without giving Neiswonger an opportunity to be heard on the issue of damages. "[C]ivil contempt sanctions, or those penalties designed to compel future compliance with a court order, are considered to be coercive and avoidable through obedience, and thus may be imposed in an ordinary civil proceeding upon *notice* and an *opportunity to be heard*." Int'l Union, United Mine Workers of Am. v. Bagwell, 512 U.S. 821, 827 (1994) (emphasis added).

Having reviewed the record, including the transcript of the October 2006 hearing, we conclude Neiswonger was afforded due process during the civil contempt proceedings. In July 2006, the FTC put Neiswonger on notice of the FTC's intent to seek compensatory sanctions and disgorgement of Neiswonger's APG program profits. Also in July 2006, the court-appointed temporary receiver submitted a preliminary report, estimating Neiswonger's proceeds from the APG program were $2,799,472. The district court initially scheduled the hearing on the motion to show cause in July 2006; however, the parties filed a joint motion to continue the hearing until September 2006. The hearing was again rescheduled to October 25 and 26, 2006, giving Neiswonger ample opportunity to prepare for the hearing.

At the October 2006 hearing, when the FTC moved to admit into evidence the document calculating Neiswonger's proceeds from the sales of the APG program, Neiswonger initially objected. Neiswonger complained the compilation was generated at the FTC's request and based his objection on the lack of opportunity to view the underlying data in advance of the hearing, and Neiswonger's assertion that the document contained missing and unauthenticated information. After hearing the

objections to the document and the FTC's responses, the following exchange occurred:

> THE COURT: Well, it appears to me that after we're through here I may need to postpone this hearing and let everybody get up to speed on it and then come back again.
>
> MR. FRANKEL:[3] Well, I hope not.
>
> . . . .
>
> THE COURT: I hope not too. You say you're not prepared, you haven't received the document, Mr. McAllister[4] hasn't received the underlying documents.
>
> . . . .
>
> MR. McALLISTER: Judge, clearly we do not want the continuance. If that is the remedy, I withdraw my objection. . . .
>
> . . . .
>
> But for purposes of this proceeding, I made the objection that the Court wants to accept it subject to the objections to avoid any continuance, that is fine with me.
>
> MR. FRANKEL: And I agree with him, Mr. McAllister.

The district court received the document subject to the objections and permitted the representative of the receiver to testify that Neiswonger's estimated income from the APG program was $3,089,000. The representative of the receiver testified Neiswonger's income was subject to change because the receiver had requested additional documents that were not yet in the receiver's possession. The representative expected that any change in Neiswonger's income would be an upward adjustment, rather than a downward adjustment. Neiswonger and the other defendants declined to cross-examine the representative. At the conclusion of the two-day hearing, the district court gave the parties the opportunity to submit briefs and

---

[3]Mr. Frankel represented Reed at the October 2006 hearing.

[4]Mr. McAllister represented Neiswonger at the October 2006 hearing.

proposed findings of fact and conclusions of law. Neiswonger did not make any further submissions; thus, the representative's estimation of Neiswonger's income was otherwise unchallenged by Neiswonger.

In April 2007, the district court entered an order, finding Neiswonger in contempt for the violations of the 1997 permanent injunction. When the district court announced its intention, upon a final computation by the receiver, to disgorge Neiswonger of his proceeds from the APG program sales, Neiswonger made no effort then to challenge the evidence concerning Neiswonger's proceeds. Neiswonger challenged the receiver's computation only after the receiver submitted its final calculation of Neiswonger's proceeds in March 2008.

We conclude Neiswonger was given notice and ample opportunity to be heard on the issues of damages and disgorgement. Neiswonger chose not to take full advantage of the opportunities. Most significantly, Neiswonger turned down the district court's offer to continue the show cause hearing to permit Neiswonger to review the receiver's computation of proceeds, and Neiswonger chose not to submit a brief and proposed findings of fact and conclusions of law following the hearing. We find no abuse of discretion in the district court's denial of Neiswonger's motion for a hearing on the issue of damages and disgorgement.

In his reply brief, Neiswonger also argues he was denied due process because the receiver's report did not comply with Fed. R. Civ. P. 26(a)(2)(B)(iv) and Fed. R. Evid. 706. These arguments were not made in Neiswonger's opening brief. The FTC filed a motion to strike this portion of Neiswonger's reply brief. "Claims not raised in an opening brief are deemed waived," Jenkins v. Winter, 540 F.3d 742, 751 (8th Cir. 2008) (citations omitted), and we do "not consider issues raised for the first time on appeal in a reply brief 'unless the appellant gives some reason for failing to raise and brief the issue in his opening brief,'" id. (quoting Neb. Plastics, Inc. v. Holland Colors Ams., Inc., 408 F.3d 410, 421-22 n.5 (8th Cir. 2005)). Because Neiswonger provided no explanation for his failure to raise these arguments in his opening brief,

the arguments are waived and we grant the FTC's motion to strike. Even if we were to consider these arguments, we would nevertheless conclude the arguments lack merit because we agree with the district court that the receiver was acting in its capacity as a fiduciary agent of the court, rather than as an expert.

### C.      Evidentiary Findings

Neiswonger next complains the district court's finding regarding Neiswonger's proceeds from the APG program sales "is not supported by the evidence submitted by the FTC." In addition to the due process arguments Neiswonger made above, Neiswonger suggests the contempt sanction was based on the receiver's "estimate testimony of income" and the receiver incorrectly attributed certain amounts to Neiswonger as proceeds. As we stated above, Neiswonger had ample opportunity to challenge the receiver's income computations before, during, and after the October 2006 hearing. Neiswonger withdrew his objection to the district court receiving into evidence the receiver's document calculating Neiswonger's proceeds, chose not to cross-examine the representative of the receiver at the hearing, made no attempt to access the records underlying the receiver's proceed calculations before or after the hearing, and declined to submit a brief or proposed findings of fact and conclusions of law to the district court following the hearing. Based upon the record in this case, we cannot say the district court abused its discretion or clearly erred in adopting the receiver's calculation of Neiswonger's proceeds.

### D.      Neiswonger's Remaining Arguments

Neiswonger also asserts the district court's contempt order violates state and federal law, and is overly broad because the provision in the district court's contempt order which requires Neiswonger to turn over certain assets to the receiver in partial satisfaction of the judgment violates state and federal law.[5] First, Neiswonger claims

---

[5]Neiswonger suggests the district court failed to consider these issues before entering the amended contempt order. Contrary to Neiswonger's suggestion, these arguments were made and addressed by the parties in district court filings before the

the district court cannot compel Neiswonger to turn over real property located in Las Vegas, Nevada, because Neiswonger's wife, who is not a party to the action, has a marital interest in the property. To support his argument, Neiswonger relies upon a case which interpreted New Jersey law. See S.E.C. v. Antar, 120 F. Supp. 2d 431 (D.N.J. 2000). In Antar, the court considered whether, under New Jersey law, a husband's creditor could obtain partition or foreclosure of a marital home to satisfy the debts of the husband when the husband held the home in tenancy by the entirety with his wife. Id. at 449-50. The court held, under the circumstances of that case, foreclosure and partition of the family home were inappropriate. Id. at 450. However, Antar has no bearing on this case. The subject Neiswonger real property is located in Nevada. Nevada is a community property state, and under the law of Nevada, "community property is subject to a spouse's debt irrespective of whether both spouses were a party to the action." Jones v. Swanson, 341 F.3d 723, 738 n.6 (8th Cir. 2003) (citing Randono v. Turk, 466 P.2d 218, 224 (Nev. 1970)); see also Cirac v. Lander County, 602 P.2d 1012, 1017 (Nev. 1979) (noting "community property of spouses may be subject to liability of judgments whether or not the wife was a party to the suit" (citation omitted)).

Neiswonger next argues the district court abused its discretion by ordering him to turn over the real property in Nevada because the property is owned by a trust that bears Neiswonger's wife's initials, Neiswonger no longer resides in the home, and Neiswonger's wife resides in the home with her son. Our review of the trust documents reveals Neiswonger is a trustor/grantor, trustee, and beneficiary of the named trust, and Neiswonger cites no authority to support his arguments that he cannot be compelled to turn over property owned by the trust. See F.T.C. v. Affordable Media, 179 F.3d 1228, 1241 (9th Cir. 1999) (stating a defendant who asserts he is unable to comply with a court order requiring him to turn over assets held in trust "must show 'categorically and in detail' why he is unable to comply," and

_____

entry of the amended civil contempt order.

-11-

observing, '[i]n the asset protection trust context, . . . the burden on the party asserting an impossibility defense will be particularly high because of the likelihood that any attempted compliance with the court's orders will be merely a charade rather than a good faith effort to comply" (citation omitted)).

Finally, Neiswonger contends the portion of the amended contempt order requiring Neiswonger to turn over the assets in his A.G. Edwards individual retirement account (IRA) conflicts with state and federal law. Neiswonger claims he should not be required to comply with this provision of the contempt order because (1) the funds in his IRA are exempt from collection by creditors under Nevada law, and (2) he would be required to pay a penalty to the Internal Revenue Service in order to liquidate and transfer the funds in his IRA.

Neiswonger relies upon Dudley v. Anderson (In re Dudley), 249 F.3d 1170, 1172 (9th Cir. 2001), wherein the Ninth Circuit considered whether, under California law, IRAs were exempt from creditors' claims in a bankruptcy estate. The Ninth Circuit recognized an IRA designed and used solely or principally for retirement purposes would be exempt under California law. Id. at 1176-77. Neiswonger, however, cites no authority to support his contention that the district court's authority to order him to turn over the assets in his IRA was limited by any Nevada state law exemptions. On the other hand, the FTC cites other authority demonstrating a district court is not constrained by state law exemptions in fashioning disgorgement orders. See Steffen v. Gray, Harris & Robinson, P.A., 283 F. Supp. 2d 1272, 1282 (M.D. Fla. 2003) ("A district court has broad discretion in fashioning a disgorgement order. For example, a district court can ignore state law exemptions as well as other state law limitations on the ability to collect a judgment in fashioning a disgorgement order." (internal citations omitted)); see also S.E.C. v. Musella, 818 F. Supp. 600, 602 (S.D.N.Y. 1993) ("Contrary to [defendant's] assertion, the extent to which [his] assets and income would be exempt from attachment under New York law does not alter his duty to pay the amount he owes under the [federal civil contempt] order." (citation

omitted)).  In this case, Neiswonger is not an innocent debtor covered by state debtor protection legislation.  Neiswonger violated a permanent injunction and used a deceptive and misleading marketing scheme to sell business opportunity programs.  Neiswonger has failed to demonstrate the district court abused or exceeded its discretion or clearly erred in imposing the amended civil contempt order.

## III.  CONCLUSION

For the reasons stated in this opinion, we affirm the district court.  We also grant the FTC's motion to strike portions of Neiswonger's reply brief.

_____