# United States Court of Appeals
## For the Eighth Circuit

_____

No. 20-3308

_____

Wal-Mart Stores, Inc., a Delaware corporation

*Plaintiff - Appellee*

v.

Cuker Interactive, LLC, a California limited liability company

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Arkansas - Fayetteville

_____

Submitted: January 13, 2022
Filed: March 3, 2022

_____

Before SMITH, Chief Judge, WOLLMAN and ERICKSON, Circuit Judges.

_____

ERICKSON, Circuit Judge.

After a contentious trial; extensive post-trial motions; a related-malpractice case; and previous appeals, this Court upheld the district court's determination on damages and the issuance of a permanent injunction against Wal-Mart Stores, Inc. ("Walmart"). Walmart Inc. v. Cuker Interactive, LLC, 949 F.3d 1101 (8th Cir. 2020); see Henry Law Firm v. Cuker Interactive, LLC, 950 F.3d 528 (8th Cir. 2020). The injunction required Walmart to delete Cuker Interactive, LLC's ("Cuker")

Adobe Source Files from its computers and attest to compliance. <u>Walmart</u>, 949 F.3d at 1113. Based upon its belief that Walmart has failed to comply with the terms of the injunction, Cuker sought to initiate contempt proceedings against Walmart. Cuker also requested supplemental damages for Walmart's post-verdict use of its trade secrets. The district court[1] denied Cuker's requests. Finding no abuse of discretion, we affirm.[2]

In January 2014, Walmart and Cuker signed a contract in which Walmart agreed to pay Cuker a fixed fee to make its website for Walmart's UK subsidiary, ASDA Groceries, "responsive" (i.e., accessible from any device). Around this same time, Walmart was also exploring ways to make its United States grocery website, Walmart2Go, responsive. In early 2014 the development of responsive websites was in its early days. Unlike today, most websites, like Walmart's, were running two separate sites: one for mobile devices and one for desktops.

According to the contract's terms, Cuker agreed to design and build thirteen templates for access by desktops, tablets, and smartphones. The scope of the work was limited to providing responsive-design work, to be used in conjunction with Walmart's existing code and design. Shortly after the project launched, however, the parties began to have fundamental disagreements over the terms of their contract, which ultimately led to this protracted litigation. At trial, Cuker presented evidence indicating that, by misappropriating Cuker's trade secrets, Walmart saved itself about six months of development time in making its website fully responsive.

The permanent injunction required Walmart to remove and permanently delete Cuker's trade secrets from its systems, and to file an affidavit of compliance. Walmart filed two affidavits from its senior vice president of technology: the first

---

[1] The Honorable Timothy L. Brooks, United States District Judge for the Western District of Arkansas.

[2] Cuker has not appealed the district court's decision related to supplemental damages.

one averred that Walmart had deleted Cuker's trade secrets, and the second one stated that no third-party was using the fifteen specifically identified Adobe Source Files. Cuker was unconvinced. It believed that Walmart was continuing to utilize its trade secrets in thousands of pages of product displays each day. To support its claim, Cuker submitted a declaration from Dr. William C. Easttom II (Chuck Easttom), who noted that one could delete an Adobe file but continue to use the design. After performing several qualitative and quantitative analyses, Easttom opined that while the ASDA website landing page was redesigned, the individual product pages were not, and, in his opinion, Walmart was continuing to use trade secrets that are part of the injunction. Walmart countered Easttom's opinions, affirming that it complied with the terms of the injunction and contending that Easttom's visual examination of the website was insufficient to raise a good faith suspicion that Walmart lied about its compliance.

The district court noted that Easttom had not been given access to the underlying codes powering Walmart's websites so Easttom could neither confirm nor refute Walmart's averment that the Adobe files in question have been deleted. The court suspected that if access was granted to Walmart's proprietary databases, it would result in no more than a fishing expedition or a hunt for buried treasure. Authorization was not granted to examine the underlying codes because the district court found Cuker had failed to make a prima facie showing of disobedience of the injunction.

Cuker contends the district court erred when it failed to consider all of its evidence before denying its request to commence contempt proceedings. Cuker also challenges the district court's determination that it failed to make a prima facie showing of a violation of the injunction. In order to proceed with a contempt petition, a party must make a prima facie showing of a violation of, or refusal to follow, a court order. See Taylor v. Finch, 423 F.2d 1277, 1279 (8th Cir. 1970). To find contempt, the proponent bears the burden of proving, by clear and convincing evidence, there are facts warranting relief in the nature of civil contempt. Acosta v. La Piedad Corp., 894 F.3d 947, 951 (8th Cir. 2018) (quoting Jake's, Ltd., Inc. v. City

of Coates, 356 F.3d 896, 899-900 (8th Cir. 2004)).  We review the denial of a contempt order for abuse of discretion.  F.T.C. v. Neiswonger, 580 F.3d 769, 773 (8th Cir. 2009) (quoting Chaganti & Assocs., P.C. v. Nowotny, 470 F.3d 1215, 1223 (8th Cir. 2006)).

Cuker's claim that the district court did not consider its arguments or evidence is belied by the record.  As the trial judge, the court noted its familiarity with the technology and trade secrets at issue.  The court recounted in its order that Cuker's briefs and evidence consisted of over 70 pages.  It expressly noted Easttom's declaration and referenced portions of the declaration in its order.  The district court's refusal to open contempt proceedings was based on the sufficiency of Cuker's evidence—the district court expressly found that Easttom's "observations about how the website looks and feels to the public" combined with Easttom's conclusion that "Cuker's proprietary source code *might* still be embedded somewhere in Walmart's website" was not enough to make a prima facie showing of a violation of the injunction.  In essence, the district court reasoned that Cuker was required to do more than rely on Easttom's "hunch."

Cuker appears to assume that everything on the website, even visual elements that pre-dated its involvement with Walmart, constitutes a trade secret.  While Easttom asserts that he did more than a visual comparison, the methods and analyses relate to how the website looks and feels.  For example, Easttom examined the layout of the product pages, and noted such things as where the "add" button is placed, the size of the button, the location placement for the price, the color scheme, and placement of descriptors such as price per weight.  This analysis relates to the "look and feel" of the page and ignores the fact that the scope of Cuker's engagement was to design templates that worked on top of Walmart's existing codes and layout.

Upon review of the record and Cuker's arguments, Cuker's challenges to the district court's order go to the weight the court gave its evidence, not a failure to consider the evidence. We find no clear error in the district court's factual findings and no abuse of discretion in declining to open contempt proceedings.

The judgment of the district court is affirmed.

_____