**UNITARIAN UNIVERSALIST CHURCH OF MINNETONKA, Plaintiff,**

v.

**CITY OF WAYZATA, Defendant.**

**Civ. No. 10–607 (RHK/TNL).**

United States District Court, D. Minnesota.

Aug. 31, 2012.

Samuel W. Diehl, Dean A. LeDoux, Joy R. Anderson, Gray, Plant, Mooty, Mooty & Bennett, P.A., Minneapolis, MN, for Plaintiff.

George C. Hoff, Kimberly B. Kozar, David M. Quealy, Hoff, Barry & Kozar, P.A., Eden Prairie, MN, for Defendant.

## MEMORANDUM OPINION AND ORDER

RICHARD H. KYLE, District Judge.

### INTRODUCTION

On December 22, 2011, a representative of Plaintiff Unitarian Universalist Church of Minnetonka ("UUCM"), Mayor Ken Wilcox of Defendant City of Wayzata (the "City"), several City Council members, and the parties' respective counsel appeared before Magistrate Judge Leung for a settlement conference. After almost twelve hours of negotiations, the parties entered Judge Leung's courtroom and dictated onto the record "all the material terms" of

a "full and final settlement" between them. When asked by the Magistrate Judge whether "all the material terms of the [parties'] agreement" had been recited, counsel for each party responded, "Yes." Judge Leung then inquired of the UUCM representative and the Mayor whether they agreed to those "material terms" as "the full and final settlement of this" case; each answered in the affirmative. In light of the parties' settlement, the Court dismissed this case, reserving jurisdiction to reopen it "for good cause shown."

Now, more than seven months later, UUCM moves to reopen, arguing that the parties "did not and have not agreed to all of the material terms" of a settlement and, hence, "[a] binding settlement has never been formed between" them. For the reasons that follow, the Court rejects these arguments and, accordingly, will deny the Motion.

## BACKGROUND

UUCM is a 200–member church that has worshipped at a building on Rice Street in the City since the 1960s. It commenced this action in 2010 after the City denied its application to construct a new, larger church in a residential area at 2030 Wayzata Boulevard East. It asserted that the City had violated its rights under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.* The parties undertook discovery for the better part of a year and, in mid–2011, cross-moved for summary judgment. The Court held oral argument on the Motions on November 29, 2011.

Before the Court ruled on the Motions, Magistrate Judge Leung held a lengthy settlement conference on December 22, 2011. Around 10:00 p.m., the parties went into the courtroom and onto the record

because, in Judge Leung's words, they had "actually been able to reach a negotiated settlement of this lawsuit" and were to "read into the record the material-all the material terms of the full and final settlement agreement," (12/22/11 Hear. Tr. at 2.) The City's counsel then recited those terms for the record:

> The parties have negotiated all day and into the evening and have reached a contingent settlement agreement. As discussed, because we are talking about a municipality in Minnesota, this will have to be presented, the final document will have to be presented to the city council for approval at an open meeting in accordance with Minnesota law.

> The material terms of the contingent settlement agreement are the following: The Plaintiff will apply for and the City will process and review under its normal process an application for rezoning[,] planned unit development and comprehensive plan amendment to allow for the construction of a church at 2030 Wayzata Boulevard, the application will be in general conformity with the site plan which was previously presented. The site plan bears the Bates numbers 5652, 5657, 5658, 5659, 5662 through 5670, and UU218. If the City approves the planned unit development, the comprehensive plan and the rezoning, the Plaintiff shall execute a release of all claims against the City and a stipulation of dismissal with prejudice of the case.

> In addition, [UUCM] and the City of Wayzata shall execute a mutual release of claims. The City—upon completion of that, the City will pay to the Plaintiff the sum of $500,000.

> [UUCM's counsel] has pointed out to me another term I do not have in my notes, your Honor. And in the settlement agreement that we will be drafting to memorialize the terms of these material

terms, that the City will include for its presentation as part of the approval process the conditions for the planned unit development.

In the event approval is given for the construction of the church as set forth above, but the church is not built in conformity with the approvals and a certificate of occupancy is not applied for by January 1st, 2018, the zoning and comprehensive plan shall revert to its current [zoning] status [ ]. The application for the certificate of occupancy to be filed by the church shall conform to the reasonable requirements of the City's building and other codes for the issuance of the certificate of occupancy. The City will negotiate for the purchase of two outlots from the Minnesota Department of Transportation which are adjacent to the 2030 Wayzata site. The negotiation between the City and the Minnesota Department of Transportation shall be consistent with the Minnesota Department of Transportation process. If negotiations are successful, UUCM will pay the purchase price negotiated by the City and the Minnesota Department of Transportation. The City makes no guarantee as to price or the status of title.

(*Id.* at 3–6.) The parties indicated that they would work to reduce the terms of their agreement to writing with a "target date" of January 16, 2012, for completion. (*Id.* at 5.)

Judge Leung then inquired whether an additional material term was that the parties had agreed to bear their own costs, and counsel answered in the affirmative. (*Id.* at 6.) Judge Leung also asked:

And is it also part of [the] agreement that the parties will share—well, as an additional term, that for purposes of putting together the settlement documents, to the extent there's any dis-

agreements on wording and so forth, that if the parties can't work that wording out, that you will inform the Court and the Court will make the final decision based on either informal or formal proceedings at the Court's discretion. And that the Court's decision will be final except that obviously the Court will not change what has been identified as the material terms of the settlement.

(*Id.* at 6–7.) Counsel agreed. (*Id.* at 7.) And counsel also then confirmed that "all the material terms of the agreement" had been placed on the record. (*Id.* at 9.)

The Magistrate Judge then proceeded to question the parties directly. Robert Dachelet, UUCM's representative, was asked whether he "accept[ed] all these as the material terms as the full and final settlement to bind the church?" (*Id.* at 11.) He answered, "Yes." (*Id.*) The same question was asked of Mayor Wilcox, who also answered in the affirmative. (Id at 12.) Mayor Wilcox also indicated that he had spoken with several members of the City Council (whose approval at an open meeting was the lone "contingency" the parties had noted), and they had expressed their "support [for] the settlement terms as outlined." (*Id.* at 13.) With their agreement fully dictated onto the record, the Magistrate Judge thanked the parties and closed the proceedings.

A few days after the settlement conference, Judge Leung added a minute entry to the docket (Doc. No. 101) indicating that the parties had reached a settlement. Based on that docket entry, the undersigned issued an Order dismissing this action, with a reservation of jurisdiction for 60 days to permit the parties to "finalize a settlement agreement." (Doc. No. 103.) A short time later, the parties requested that the Court extend the 60–day period until September 1, 2012, in order to "allow them to accomplish a number of actions

necessary or related to the contingent settlement reached on December 22, 2012." (Doc. No. 104.) Those actions included finalizing the terms of their written agreement; presenting that finalized agreement to the City Council for its approval; and submission by UUCM of its planned unit development application for the new church building. (*Id.*) The Court granted this request and extended its reservation of jurisdiction until September 1, 2012. (Doc. No. 105.)

The parties then turned their attention to drafting a document memorializing the settlement terms. That process, however, became ever more complicated, and the parties' written agreement slowly expanded far beyond the simple terms dictated onto the record at the settlement conference. As the docket indicates, the parties exchanged multiple letters and drafts of a written agreement, and on several occasions they requested Magistrate Judge Leung's assistance. Unsurprisingly, the tenor of the parties' correspondence reflected an increasing frustration over their inability to fully reduce their agreement to writing. Eventually, UUCM presented the City with a "final and best" draft agreement that it requested the City Council consider at a meeting on May 1, 2012. (Diehl Aff. Ex. 18.) UUCM also informed the City that if it did "not accept this proposal by that deadline," it would "deem" the proposal "withdrawn and UUCM will then return to Court, taking whatever action [it] believes proper and necessary." (*Id.*)

The City Council did not act by May 1, 2012—likely because, on April 17, 2012, Judge Leung issued an Order requiring the parties to submit red-lined versions of their respective draft agreements by May 2, 2012, so that he could resolve their ongoing disputes. (Doc. No. 109.) Nevertheless, on May 2, 2012, UUCM wrote Judge Leung and informed him that because the City Council had not acted on its proposal on May 1, 2012, "there is currently no settlement and no active settlement negotiation in this case." (Diehl Aff. Ex. 19.) UUCM also indicated that it intended to move to reopen the proceedings.

In light of the foregoing, the Court scheduled this matter for a status conference on May 21, 2012. At the conference, UUCM's counsel asserted that there was no agreement between the parties because the settlement negotiated before Judge Leung was contingent on City Council approval at a public hearing. Five months had passed since the settlement conference without the parties agreeing on a final written document, and hence nothing had been presented to the City Council for a public "thumbs up or thumbs down." (5/21/12 Hear. Tr. at 9.) As a result, UUCM averred that it was "at the end of the rope" and believed that it had "no choice but to [move to] reopen." (*Id.*)

The City responded that "[t]here is a settlement in this case," the "material terms" of which were "comp[rehensive] plan [amendment], rezoning, planning or development process through to the end, and then a dismissal when that's approved" by the City Council. (*Id.* at 10.) The City's attorney pointed out that the parties had agreed, on the record, to bring any disputes about the settlement documents to Judge Leung, to whom they had granted "final" authority to resolve those disputes. (*Id.* at 10.) Counsel expected the Magistrate Judge to resolve the parties' disputes imminently, which would allow a final agreement to be "take[n] back to the City Council" for approval shortly thereafter. (*Id.* at 11.) The City's attorney further averred that he had "every reason to believe [Judge Leung's forthcoming order] would be favorably received" by the City Council. (Id.)

This expectation became reality on July 2, 2012, when Judge Leung issued an Order (Doc. No. 119) attaching a "final" written agreement memorializing what were, in his view, the terms of the parties' settlement and resolving their disputes concerning additional terms they had unsuccessfully attempted to reduce to writing. This "final" written agreement was presented to, and approved by, the City Council the following day, July 3, 2012. UUCM, however, refused to accept the terms of the agreement attached to Judge Leung's Order. It claims that "[n]o binding settlement agreement was ever formed in this lawsuit" and that it "withdrew" its last "offer" to settle this action on May 1, 2012. Accordingly, it now moves to reopen the proceedings.

## ANALYSIS

In its Order dismissing this action, the Court reserved jurisdiction to reopen the proceedings "for good cause shown." UUCM proffers two arguments why there (purportedly) exists good cause to reopen the proceedings at this juncture, but the Court is unpersuaded.

### I. General principles

 It is well established that settlement agreements are governed by "basic principles of contract law." *MIF Realty L.P. v. Rochester Assoc.,* 92 F.3d 752, 756 (8th Cir.1996); *accord, e.g., Sheng v. Starkey Labs., Inc.,* 117 F.3d 1081, 1083 (8th Cir.1997). Under Minnesota law,[1] an enforceable settlement "requires the parties to reach agreement on the essential terms of the deal." *Sheng,* 117 F.3d at 1083 (citing *Ryan v. Ryan,* 292 Minn. 52, 193 N.W.2d 295, 297 (1971)). The settlement of lawsuits is "greatly favored" and settle-

ments will not be lightly set aside. *Schumann v. Northtown Ins. Agency, Inc.,* 452 N.W.2d 482, 483 (Minn.Ct.App.1990). This is particularly true when a settlement is made on the record in court; such a "stipulation as to a settlement agreement is a contract but made with more solemnity and with better protection to the rights of the parties than an ordinary contract made out of court." *Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc.,* 528 F.3d 556, 560 (8th Cir.2008); *accord, e.g., Eggleston v. Keller Drug Co.,* 265 Minn. 78, 120 N.W.2d 305, 307–08 (1963).

As recited above, the parties placed onto the record at the settlement conference a "full and final" agreement with relatively simple material terms: (1) UUCM would apply to the City to rezone (as part of a planned unit development) the property at 2030 Wayzata Boulevard, in "general conformity" with its prior application; (2) the City would process that application in its "normal" fashion; and (3) if the application were approved, the parties would release all claims and bear their own costs in this action, save for a $500,000 payment from the City to UUCM. The City also agreed to negotiate the purchase of two adjoining lots from the Minnesota Department of Transportation, and the parties agreed to take any "disagreements on wording" of their settlement documents to Judge Leung, to whom they granted "final" authority to resolve those disputes. Counsel agreed that these represented all the material terms between the parties, and each party's representative accepted those terms on the record. Simply put, there can be no doubt that there was a "meeting of the minds on the essential terms of [an] agreement," and a binding settlement was reached at the December 22 conference.

---

1. "Both parties rely on [Minnesota] law, and consequently [the Court] assume[s] that [Minnesota] law controls." *Bath Junkie Bran-*

*son, L.L.C. v. Bath Junkie, Inc.,* 528 F.3d 556, 561 n. 4 (8th Cir.2008) (citation omitted).

*Jallen v. Agre,* 264 Minn. 369, 119 N.W.2d 739, 743 (1963).

## II. "Withdrawal" of the "offer"

■ UUCM argues that the City "did not accept the settlement offer before UUCM terminated" it. (Pl. Mem. at 17.) According to UUCM, the agreement placed on the record at the settlement conference was "contingent" on City Council approval at a public hearing, and, accordingly, it retained the power to "withdraw" its settlement "offer" any time before such approval occurred. (*Id.* at 18.) This argument is flawed for at least two reasons.

First, although the parties couched their settlement agreement as "contingent" on approval at a public hearing "in accordance with Minnesota law" (12/22/11 Hear. Tr. at 3), it is questionable whether such a contingency truly existed. To be sure, many actions by municipalities are required to be undertaken in public under Minnesota's Open Meeting Law, Minn.Stat. § 13D.01. Yet, the Minnesota Supreme Court has indicated that this statute yields to the judiciary's inherent power to "order[ ] a litigating public body into a closed settlement conference." *State by Archabal v. Cnty. of Hennepin,* 505 N.W.2d 294, 298 (Minn.1993). In the Court's view, therefore, the noted "contingency" was illusory, and it was unnecessary for the settlement agreement to be vetted by the City Council at a public hearing "in accordance with Minnesota law." The City Council's assent to the agreement's terms at the settlement conference, as stated on the record, was sufficient to create a binding agreement.

Regardless, even if the settlement truly had been contingent on approval at a public hearing, that contingency was satisfied on July 3, 2012, when the City Council considered and approved the "final" agreement attached to Judge Leung's July 2 Order. UUCM argues that this approval was meaningless because it had "withdrawn" its "offer" to settle before that time. But UUCM cannot so easily avoid the settlement agreement.

■ UUCM apparently believes that City Council approval was a condition precedent to the formation of a binding agreement. (*See* Pl. Mem. at 19.) But it is mistaken. A condition of approval, such as the one at issue here, "may be construed either as (1) a condition precedent to the initial formation of [a] contract or (2) a condition precedent to an obligation to perform under an existing contract." *Stephenson v. Young,* Civ. No. 10–2197, 2011 WL 2112021, at *3 (D.Kan. May 26, 2011). In the former instance, no settlement arises because the parties intended their agreement to take effect only once formally approved. "In the latter instance, however, a condition of . . . approval does not give either party an absolute right to escape its obligations under the [settlement] agreement because the reserving party has an implied obligation to carry out the objectives of the contract in good faith[,] including submitting the agreement . . . for approval." *Id.* "If reasonably possible, courts treat a condition of . . . approval as an enforceable obligation which the reserving party must act in good faith to satisfy." *Id.* (citations omitted).

*Stephenson* is instructive, as it is nearly on all fours with the instant case. There, a mediator had suggested possible settlement terms to the parties. The defendants (including a school board) informed the plaintiff that they would accept those terms. The plaintiff, too, later accepted the proposed terms, and she asked the defendants to reaffirm their acceptance. Defense counsel responded that defendants had accepted the settlement propos-

al "subject to formal Board approval," which purportedly was "a mere formality." Before the school board could approve the settlement, however, the plaintiff attempted to "back out," asserting (as does UUCM here) that "the parties only reached an agreement subject to formal Board approval," ostensibly giving her "an unqualified right to withdraw from the agreement before [such] approval" took place. *Id.* at *3.

*Stephenson* rejected the plaintiff's maneuvering and enforced the parties' settlement, concluding that they had "entered a binding oral agreement to settle the case" that "included a condition precedent that the Board must approve the agreement, *but that condition did not preclude formation of a binding contract." Id.* (emphasis added). Instead, the condition created "an implied obligation to carry out the objectives of the oral agreement in good faith by submitting the settlement agreement for formal Board approval. *Under the oral agreement, plaintiff had no right to back out of the deal before the Board had an opportunity to formally approve the agreement." Id.* Because the school board "ultimately approved the mediator proposal," the condition was satisfied and an enforceable settlement was created. *Id.*

In the Court's view, the same result in *Stephenson* should obtain here. The parties clearly and unmistakably manifested their assent to all the material terms of a "full and final" agreement on the record at the settlement conference. The "contingency" of City Council approval did not undermine the formation of that settlement agreement; it simply obligated the City to "act in good faith" to obtain the

called-for approval. *Id.* While UUCM clearly became frustrated that the City Council had not approved the settlement at a public hearing by the spring of 2012, the Court perceives no bad faith in the City's conduct.[2] Indeed, the City Council's failure to act sooner had an obvious cause: the parties were attempting to reduce to writing the terms of a "final" agreement. In other words, there was nothing to submit to the City Council for approval until Judge Leung issued his Order setting forth the final terms of the parties' agreement on July 2, 2012. That agreement was presented to the City Council and approved the following day. Under the circumstances, there was no "offer" for UUCM to "withdraw" before the City Council acted.[3]

## III. "Failure" to agree on the material terms

UUCM's second argument for reopening the case fares no better. It contends that "the parties failed to agree at the December 22 settlement conference to all of the material and essential terms" of a binding settlement agreement. (Pl. Mem. at 21.) This argument is perplexing given that Judge Leung *expressly asked* each party's counsel whether the items recited into the record represented "all the material terms" of their agreement, and each answered, "Yes." (12/22/11 Hear. Tr. at 9.) Judge Leung also confirmed with each party's representative that they "accept[ed] all these as the material terms as the full and final settlement" of this action. (*Id.* at 11–12.) The record could not be clearer that an agreement as to all essential terms was reached at the settlement conference.

---

2. Notably, at the May 21, 2012 conference before the undersigned, UUCM's counsel acknowledged that "there ha[ve] been good faith efforts all around." (5/21/12 Hear. Tr. at 9.)

3. By the same reasoning, UUCM could not unilaterally impose a demand that the City Council act on or before May 1, 2012.

■ In arguing that no settlement was created, UUCM relies on the fact that disputes developed while the parties attempted to reduce their agreement to writing. (Pl. Mem. at 21–22.) Those disputes arose out of the parties' ostensible "agreement" to negotiate "all conditions [necessary to] City approval" of UUCM's planned unit development application and to include those conditions in their written agreement. (*Id.* at 21.) According to UUCM, it was "primarily on these key terms that the parties could not agree." (*Id.* at 21.)

Yet, the transcript of the settlement conference does not support the argument that the parties agreed to negotiate all of the items necessary to obtain City approval of UUCM's application. Rather, the transcript indicates that the City would simply *provide* UUCM with the necessary conditions. (12/22/11 Hear. Tr. at 4 ("[I]n the settlement agreement that we will be drafting to memorialize ... these material terms, ... the City *will include for its presentation as part of the approval process the conditions for the planned unit development*.") (emphasis added).) That is consistent with the remainder of the parties' agreement, which indicates that the City agreed to "process and review" UUCM's application "under its normal proce[dures]." (*Id.* at 3.) Nothing before the Court indicates that the City "normally" negotiates the conditions it imposes on applicants for a planned unit development.

■ Regardless, an agreement to negotiate the provisions necessary for approval would not undermine the existence of a settlement. To be enforceable, a settlement agreement need not dot every "I" or cross every "T," and a valid settlement may exist even when some matters are reserved for later negotiation and resolution. *See, e.g., Sheng*, 117 F.3d at 1083 ("The fact that the parties left some details

for counsel to work out during later negotiations cannot be used to abrogate an otherwise valid agreement."); *Trnka v. Elanco Prods. Co.*, 709 F.2d 1223, 1226 n. 2 (8th Cir.1983). This is especially true when the parties have recited *on the record* what they believe are the essential terms of their agreement-such a recitation demonstrates the parties' objective intent regarding the material terms of their deal. *Rosenbloom v. Gen. Nutrition Ctr., Inc.*, Civ. No. 09–1582, 2010 WL 1050297, at *3 (D.Minn. Mar. 18, 2010) (Frank, J.).

At the settlement conference, the parties set forth a simple outline for resolution of UUCM's claims: UUCM would submit a planned unit development application, in "general conformity" with its prior application, which the City would then "review under its normal process" and either accept or reject. It is of no consequence that UUCM dislikes the terms on which the City has conditioned approval of its application. Had UUCM been concerned about those terms, it should have noted them on the record before agreeing to a "full and final" settlement on December 22. *See Sowada v. Luberts*, Civ. No. 09–3320, 2011 WL 1869208, at *6 (D.Minn. Mar. 28, 2011) (Report & Recommendation of Brisbois, M.J.) ("[I]f the Plaintiffs had any objection or reservations as to the terms of a settlement agreement in this case, they should have clearly expressed it during the court proceedings laying out [those] terms."), *adopted in relevant part*, 2011 WL 1843018 (D.Minn. May 16, 2011) (Davis, C.J.); *Rosenbloom*, 2010 WL 1050297, at *3 ("Any reservation or limitation as to the scope of a settlement agreement must be clearly expressed.").

■ In the Court's view, the terms about which UUCM now complains were, at most, ancillary to the parties' agreement and do not undermine the settlement. Only those terms upon which a settlement

"hinges" are considered "material" or "essential" and must be expressly agreed to in order for a valid settlement to arise. *Sheng*, 117 F.3d at 1083. None of the disputed terms UUCM now identifies (such as future restrictions on the use of the property, etc.) were material to the parties' agreement, which contemplated a very basic framework to resolve this action: "planning or development process through to the end, and then a dismissal when that's approved" by the City Council. (5/21/12 Hear. Tr. at 10.) *See Jackson v. Fed. Reserve Employee Benefit Sys.*, Civ. No. 09–4873, 2009 WL 2982924, at *4 (D.Minn. Sept. 14, 2009) (Doty, J., adopting Report & Recommendation of Noel, M.J.) (enforcing settlement contemplating dismissal of action in return for $15,000 payment, despite defendant later insisting on confidentiality, non-disparagement, and similar "ancillary" provisions in written settlement agreement).

Perhaps most notably, UUCM's conduct *following* the settlement conference confirms that it did not view the approval conditions as material to the settlement. The parties granted Judge Leung authority to resolve disputes over *non-material* settlement terms. (*See* 12/22/11 Hear. Tr. at 6–7 ("[F]or purposes of putting together the settlement documents, . . . if the parties can't work that wording out, . . . the Court will make the final decision . . . except that obviously the Court will not change what has been identified as the material terms of the settlement.").) Yet, it was *UUCM* that repeatedly sought the Magistrate Judge's intervention when the parties could not resolve their disputes over conditions for approval of the planned unit development (*see* Diehl Aff. Exs. 11, 14–15), thereby implicitly acknowledging that such conditions were not material. Indeed, UUCM revised its draft agreements, without objection, to reflect the Magistrate Judge's comments regarding those conditions (*see id.* Ex. 16); if they had in fact been material to the agreement, he would have lacked authority to alter them.

## IV. UUCM's Objections to Judge Leung's Order

 Finally, the Court pauses to address UUCM's Objections (Doc. No. 120) to Judge Leung's July 2, 2012 Order and the "final" settlement agreement attached thereto. According to UUCM, the Order wrongly "impose[s] a binding settlement agreement on the parties" (id. at 6), but the Order does nothing of the sort. Rather, it simply (1) memorializes the terms stated on the record, *and assented to by the parties,* at the settlement conference, and (2) resolves the parties' disagreements concerning additional terms they had unsuccessfully attempted to reduce to writing, for which they granted Judge Leung authority to make a "final decision based on either informal or formal proceedings at the Court's discretion." (12/22/11 Hear. Tr. at 7.) This same reasoning undermines UUCM's argument that Judge Leung lacked authority, under 28 U.S.C. § 636 and the Local Rules of this Court, to "*bind* the parties to a settlement agreement." (Objections at 7–8 (emphasis added).) Lastly, having reviewed the "final" settlement agreement attached to the Order, the Court rejects UUCM's argument that the agreement varies from the *material* terms stated on the record at the settlement conference. (*See* Doc. No. 119 Ex. A, § 2.1 (UUCM to submit planned unit development application in general conformity with prior application); *id.* §§ 2.5, 3.1 (City to process and review application "under its ordinary and normal process"); *id.* §§ 4.1, 5 (if application approved, dismissal with prejudice and $500,000 payment); *id.* § 7 (City to negotiate for pur-

chase of adjacent outlots from Minnesota Department of Transportation).)

 UUCM objects that the final agreement does not actually resolve certain of the parties' disputes regarding conditions for approval of its planned unit development, leaving them open to future negotiations. (*See id.* Ex. B ("The Parties shall negotiate reasonably and in good faith to finalize agreement on additional conditions for a PUD that are consistent with this Agreement.").) As set forth above, however, the Court does not believe those terms are material to the parties' settlement, and leaving them "for later negotiation does not vitiate the validity of the agreement." *Trnka,* 709 F.2d at 1226 n. 2; *accord, e.g., Sheng,* 117 F.3d at 1083.

But in the Court's view, this particular Objection drives home a far more important point: the parties have lost sight of the forest for the trees. No matter the outcome of these proceedings or the proposed planned unit development process, the parties are now, and will remain, bedfellows. UUCM has worshipped in the City since the 1960s, and that will continue regardless of whether a new church is constructed. Simply put, the parties need to learn to work together and not against one another, and they must resolve their disputes (and negotiate with one another) in good faith. It is the Court's sincere hope, with this litigation put to rest, that the parties will stop viewing each other as adversaries', put aside their differences, and "be ... good neighbors to each other." (12/22/11 Hear. Tr. at 15.)

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS ORDERED** that UUCM's (1) Motion to Reopen Action and to Vacate Dismissal Order (Doc. No. 121) and (2) Objections to Magistrate Judge Leung's Order or Settlement Agreement (Doc. No. 120) are **DENIED.** This action remains **DISMISSED** pursuant to the Court's January 17, 2012 Order of Dismissal (Doc. No. 103).